No. 01-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 76

CHARLES FISCH,

       Plaintiff,

   v.

MONTANA RAIL LINK, INC., and BURLINGTON
NORTHERN SANTA FE RAILROAD CO.,

       Defendants.

MONTANA RAIL LINK, INC.,

       Third-Party Plaintiff and Appellant,

   v.

COUNTY OF GALLATIN,

       Third-Party Defendant and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                 In and for the County of Gallatin, Cause No. DV-99-27,
                 Honorable Wm. Nels Swandal, Judge Presiding

COUNSEL OF RECORD:

       For Appellant:

              Ronald B. MacDonald and Paul N. Tranel, Datsopoulos, MacDonald
              and Lind, P.C., Missoula, Montana

       For Respondent:

              Barry G. O'Connell, Moore, O'Connell & Refling, P.C., Bozeman, Montana

                   Submitted on Briefs:  January 17, 2002
                               Decided:  April 10, 2003

Filed:

_____
                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Montana Rail Link, Inc. (MRL), appeals the summary judgment dismissal of Gallatin County (County) as a third-party defendant in a negligence action involving the collision of a train with a truck driven by Charles Fisch at a railroad crossing on a county road. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2     Shortly after 11:00 a.m. on July 9, 1998, a westbound MRL train collided with a fully loaded dump truck at the North Alaska Road Crossing just outside the city limits and east of Belgrade, Montana.  Moments before the accident, the driver of the truck, Charles Fisch, pulled out from the gravel pit located approximately 200 yards southeast of the Crossing. The North Alaska Road is about 16 feet wide and traverses the railroad right-of-way, crossing the MRL mainline and a second set of siding tracks.  The southern approach to the Crossing intersects the mainline at a 52-degree angle, an angle Fisch described in his Amended Complaint as "skewed."  At the time of the accident, the southern approach was marked by a standard yellow warning sign; non-mechanical, X-shaped crossbucks; and a stop sign.

¶3     Fisch sustained catastrophic injuries as a result of the collision.  He filed an action against Burlington Northern Santa Fe (BNSF), which owns the railroad right-of-way, and MRL, which leases trackage.  Fisch alleged the railroad corporations were negligent for running the train at a dangerous speed,  failing to sound the locomotive whistle, and failing

2

to install adequate safety features to protect drivers from the dangers presented by the Crossing.  BNSF reached a settlement with Fisch and was dismissed from the case.

¶4      The mainline track where the collision occurred was constructed in 1883 by the Northern Pacific Railway (NPRR).  The North Alaska Road, established in 1898, originally followed a section line north to approximately 200 feet from the tracks.  At that point, the road turned and ran along the southern edge of the railroad right-of-way in a westerly direction into the town of Belgrade.  In 1923, the County sought to establish a crossing on the North Alaska Road.  An entry in the Gallatin County Commissioners' Journal on December 29, 1923, records the following:

> The Board received the following communication from Roadmaster Nordquist of the NOR PAC RY CO--
>
> "The Railway Company has now authorized Gallatin County to proceed and install public highway crossing over the Northern Pacific right-of-way and track or section line about one-half mile east of Belgrade, as per your request.
>
> "The Northern Pacific is to furnish the necessary planking and pay the cost of placing same, and Gallatin County is to do the grading up to the track on both sides.
>
> "With this understanding, you may now commence to work at any time that it seems desirable for the County."

(Punctuation original.)    The North Alaska Road Crossing remained in public use continuously from its establishment until the crossing was relocated in 1999.

¶5      MRL filed a Third Party Complaint against Gallatin County and alleged, among other claims, that the County negligently designed and constructed the North Alaska Road to intersect with the railroad's mainline at a hazardous angle.  By Answer, the County admitted

3

it was properly joined as a third party and that it had on occasion performed maintenance on the North Alaska Road. The County denied all allegations of negligence regarding the design, construction or maintenance of the roadway. The District Court granted summary judgment in favor of the County on the issue of liability. MRL moved for reconsideration, which the court denied.

## STANDARD OF REVIEW

¶6     Our standard of review on appeal from summary judgment is *de novo* and we apply the same criteria as the district court based on Rule 56, M.R.Civ.P. *Mickelson v. Montana Rail Link, Inc.*, 2000 MT 111, ¶ 61, 299 Mont. 348, ¶ 61, 999 P.2d 985, ¶ 61 (citing *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903). We set forth our inquiry in *Bruner* as follows:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Mickelson*, ¶ 61 (quoting *Bruner*, 272 Mont. at 264-65, 900 P.2d at 903).

¶7     This Court has routinely stated that the purpose of summary judgment is to eliminate unnecessary trials, but that summary adjudication should "never be substituted for a trial if a material factual controversy exists." *Boyes v. Eddie*, 1998 MT 311, ¶ 16, 292 Mont. 152, ¶ 16, 970 P.2d 91, ¶ 16 (citations omitted).

4

## DISCUSSION

¶8 Summary judgment favoring a defendant is proper when the plaintiff fails to establish an element material to the negligence claim. *Bickler v. Racquet Club Heights Associates* (1993), 258 Mont. 19, 23, 850 P.2d 967, 970 (citation omitted). Proof of negligence consists of four elements: (1) existence of a duty; (2) breach of that duty; (3) causation; and (4) damages. *Abraham v. Nelson,* 2002 MT 94, ¶ 11, 309 Mont. 366, ¶ 11, 46 P.3d 628, ¶ 11 (citations omitted). Whether a duty is owed from one party to another is a question of law. *Nautilus v. First National Insurance* (1992), 254 Mont. 296, 299, 837 P.2d 409, 411 (citing *Roy v. Neibauer* (1981), 191 Mont. 224, 226, 623 P.2d 555, 556). Here, we conclude that analysis of the element of duty is determinative.

¶9 The District Court found the following facts to be undisputed: the County graded and maintained the North Alaska Road through the railroad right-of-way; the railroad corporations never granted a roadway easement to the County; use of the roadway was permissive and no adverse use by the County supported an easement by prescription; railroad owners and operators that preceded MRL approved the North Alaska Road Crossing as it was constructed; MRL generally approved and adopted the crossing "as is;" and MRL failed to request the County or any other entity to alter the crossing until after Fisch's accident. The court also took notice of the abundance of "odd" angles at railroad-highway intersections in Montana. Concluding that the County owed no duty to MRL concerning the North Alaska Road Crossing, the court dismissed MRL's third party complaint against the County by summary judgment.

5

¶10    MRL cites *Buck v. State* (1986), 222 Mont. 423, 723 P.2d 210, for the principle that the County has a duty "to construct and maintain its highways so that no latent nor hidden defect or trap thereon constitutes an unreasonable danger to persons and vehicles." *Buck*, 222 Mont. at 429, 723 P.2d at 214 (citing 39 Am. Jur.2d 887 Highways, Streets, and Bridges § 489), overruled on other grounds by *Dobrocke v. City of Columbia Falls*, 2000 MT 179, 300 Mont. 348, 8 P.3d 71.  MRL claims that the County breached this duty by constructing the North Alaska Road Crossing at a dangerous, 52-degree angle of intersection and that this unsafe design was a contributing factor in causing the accident.  Asserting that the existence of the County's duty can only be resolved after a jury has determined whether the skewed southern approach of the North Alaska Road to MRL's main line was a cause of the accident, MRL contends that summary judgment was inappropriate.

¶11    The evidence must be viewed in the light most favorable to the nonmoving party in a summary judgment proceeding, and all reasonable inferences will be drawn in favor of the party opposing summary judgment.  *Mickelson*, ¶ 62 (citing *Oliver v. Stimson Lumber Co.,* 1999 MT 328, ¶ 22, 297 Mont. 336, ¶ 22, 933 P.2d 11, ¶ 22).  Accordingly, we view the evidence in the light most favorable to MRL and draw all reasonable inferences in its favor.  MRL maintains that the County presented no evidence to controvert the testimony of traffic engineer Dr. Kenneth Heathington, an expert witness for Charles Fisch, who stated: "There are some roadway geometrics of the crossing on Alaska Road which have a negative impact on safety."  Hence, for purposes of our analysis, we accept an inference that the angle of

6

intersection created visibility problems for Fisch as he approached the North Alaska Road Crossing from the south and that the skewed angle was a factor causing the accident.

¶12 MRL's second argument against summary judgment is that factual issues exist regarding whether the County breached its duty to maintain a reasonably safe roadway by designing and constructing the North Alaska Road at an unsafe angle to the tracks and allowing that unsafe condition to persist. The District Court noted that NPRR authorized the County to install the roadway on the section line in 1923. MRL contends that the court ignored the historical fact that when NPRR did so, it also presented the County with a choice of crossing locations. The 1923 communication from NPRR to the Gallatin County Commissioners gave the County permission "to install [a] public highway crossing over the Northern Pacific right-of-way and track or [sic] section line about one-half mile east of Belgrade." MRL argues that the County had the option of installing the road either over the right-of-way *or* over the section line. MRL maintains that the alignment of the North Alaska Road on the section line running north through the railroad right-of-way does not resolve outstanding factual issues regarding the historical selection of the crossing location, which has bearing on whether the railroad, the County or both are liable for establishing the unsafe, 52-degree angle of road-rail intersection.

¶13 MRL argues that Rule 18.6.311, ARM, establishes the County's duty herein by defining the responsibilities of the County and the railroad in regard to the North Alaska Road Crossing. MRL asserts that the regulation requires the County to construct and

7

maintain the roadway through the crossing in a safe manner. Rule 18.6.311, ARM, states, in relevant part:

> (1) The road authority will own the railroad signal.
>
> (2) Except in cases in which there is an encroachment onto the roadway by a railroad track, the road authority is responsible for installation and maintenance of the roadway, signs, except for crossbucks, and pavement markings in accordance with the Manual on Uniform Traffic Control Devices (MUTCD), 1988 edition, and any amendments thereto which are in effect as of the date this rule is adopted, published by the U.S. Department of Transportation, federal highway administration, which is hereby incorporated by reference. . . . The road authority is responsible for the roadway between multiple tracks. . . .
>
> . . . .
>
> (4) The railroad is responsible for maintaining the signals and crossbuck signs and the crossing surface from the end of the railroad tie to the other end of the railroad tie.

Because the County, as the "road authority," is responsible for the "installation and maintenance of the roadway" under this provision, and the County installed the North Alaska Road at a skewed angle to the railroad tracks, MRL asserts that the County is liable for the negligent crossing design. Rule 18.6.311(4), ARM, delineates the railroad's maintenance responsibilities at the crossing to include only the crossbucks and "the crossing surface from the end of the railroad tie to the other end of the railroad tie." MRL argues therefrom that the railroad's duty is limited to the construction and maintenance of the surface across the railroad ties and does not encompass the layout of the railroad-highway intersection or extend to the width of the railroad right-of-way.

8

¶14 The 1989 Legislature delegated authority to the Montana Highway Commission to adopt rules for prioritizing the state's expenditure of federal funds appropriated under the Federal Highway Safety Act for the purpose of improving the safety of railroad crossings. Chapter 359, L. 1989. *See also* §§ 60-2-121 and -201, MCA. The Commission adopted Rule 18.6.311, ARM, in 1997 and noted that the rule "only appl[ies] to situations in which federal funds are used for signal upgrade or other improvements to railroad crossings." Mont. Admin. Record 643 (April 7, 1997). The rule designates the road authority as the owner of any crossing signals purchased and installed with federal funds and assigns the railroad responsibility for signal maintenance. Rule 18.6.311(1) and (4), ARM. The rule also allocates maintenance responsibility for the roadway to the road authority and for the cross-tie planking to the railroad. Rule 18.6.311(2) and (4), ARM.

¶15 The North Alaska Road Crossing had been in public use for about seventy-four years when the Montana Highway Commission adopted Rule 18.6.311, ARM. As demonstrated by the above-cited administrative history, the clear intent was to limit application of the rule to projects arising from the State's allocation of federal funds made available to improve the safety of highway-rail crossings. The rule does not address road-rail alignment or crossing design. Although the rule states that the road authority is responsible for "installation" of the roadway, signs and pavement markings, the use of the term "installation" in the context of crossing safety improvements undertaken in accordance with the MUTCD indicates that the road authority must comply with plans and specifications established by the Federal Highway Administration or Montana Department of Transportation when making roadway

9

improvements under the rule. Therefore, viewed in the proper context, we find no support for MRL's contention that Rule 18.6.311, ARM, imposes liability upon the County for the original design of the road-rail crossing at issue.

¶16    MRL acknowledges that Montana law generally holds the railroad responsible for constructing and maintaining safe crossings on roads located outside city limits, as here. Section 69-14-602, MCA, provides:

> **Construction and maintenance of railroad crossings outside of incorporated cities and towns.** At all places in the state, outside of incorporated cities and towns where a lawfully established public highway crosses any railroad, it shall be the duty of the railroad company owning or operating such railroad to construct and thereafter maintain in proper condition a good and safe crossing.

This statute was approved by the Montana Legislature in 1919 and is one of a series of measures governing railroad-highway crossings. *See* Title 69, Chapter 14, Part 6, Montana Code Annotated. Together, these laws set forth the procedure for establishing a railroad crossing wherever public necessity and convenience requires. The board of county commissioners is authorized to order the construction and maintenance of grade railroad crossings in unincorporated villages or towns within the board's jurisdiction. Section 69-14-603, MCA. A copy of the board's order must be served upon the railroad company. Section 69-14-604, MCA. The railroad must construct the crossing ordered by the board within 60 days after service of the order. Section 69-14-605, MCA. The railroad shall be fined no less that $10 or more than $100 per day for failure to comply with an order to construct a crossing within the time limits provided. Section 69-14-611, MCA. Finally, nothing contained in these provisions "shall in any way affect the liability of any railroad company

for damage to persons or property injured at any crossing." Section 69-14-610, MCA. These statutes, in essentially the same form, were in force when the North Alaska Road Crossing was established in 1923.

¶17 While the railroad's duty to construct and maintain a good and safe crossing is well established in Montana law, MRL argues that the County in this instance is liable for the negligent design of the North Alaska Road at a "skewed" angle to the rail line because the County undertook to construct the roadway to cross pre-existing tracks. The County, although acknowledging a duty to maintain the North Alaska Road in a reasonably safe condition, points out that it had no authority to enter BNSF's right-of-way to reconfigure the road-mainline intersection. MRL does not dispute the District Court's finding that the County does not have an easement through railroad right-of-way, and concurs that the County would have been trespassing on railroad property if it unilaterally undertook reconstruction of the road-rail intersection. MRL also admits to taking no steps itself to realign the crossing. Nevertheless, MRL argues that the County is not absolved of its share of the liability for the historical construction of the hazardous crossing angle or its failure to improve the unsafe design despite knowledge of the risks presented to the traveling public.

¶18 We are unpersuaded by MRL's argument. It is uncontested that the North Alaska Road Crossing was built in the early 1920s through the cooperative efforts of the County and the railroad. The Crossing is located entirely on railroad property, and NPRR and successor railroad corporations through the years have allowed the County access to maintain the road and erect signs on the railroad's right-of-way. At the time of the accident, the North Alaska Road Crossing was located on property owned by BNSF, and MRL leased the trackage.

11

While the record does not indicate whether the County or the railroad chose the exact location for the North Alaska Road Crossing, this historical ambiguity raises no genuine issue of material fact. Whoever actually selected the crossing location is irrelevant to the determination of duty, which is established by statute. The duty "to construct and thereafter maintain in proper condition a good and safe crossing" is assigned by law to the railroad owners and operators. Section 69-14-602, MCA. The design of a road-rail intersection is crucial to the safety of a crossing and the duty to construct a safe crossing rests squarely with the railroad.

## CONCLUSION

¶19 We conclude that the County owed no duty to MRL regarding the design of the intersection of road and rail at the North Alaska Road Crossing and affirm the District Court's order granting summary judgment as a matter of law.

¶20 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART