No. 02-379

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 357N

CURT COX,

       Plaintiff and Appellant,

     v.

ROCKY MOUNTAIN BANK OF PLAINS,
a corporation, and JIM BROWN,

       Defendants and Respondents.
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
JIM BROWN,

       Counterclaim Plaintiff and Respondent,

     v.

CURT COX,

       Counterclaim Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DV 2000-74,
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Curt Cox, *Pro Se*, Plains, Montana

      For Respondents:

          Bruce A. Fredrickson and Kimberly S. More, Crowley, Haughey, Hanson,
Toole & Dietrich, P.L.L.P., Kalispell, Montana (Bank)

          T. K. Botsford, Attorney at Law, Missoula, Montana (Brown)

          Submitted on Briefs: January 30, 2003

              Decided: December 17, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), of the Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Curt Cox (Cox) appeals from the order of the Twentieth Judicial District, Sanders County, granting summary judgment to Respondents Rocky Mountain Bank of Plains and Jim Brown (Brown), and granting summary judgment to Brown on his counterclaim against Cox.  We affirm in part and reverse in part.

¶3    We restate the issues on appeal as follows:

¶4    Did the District Court err in granting summary judgment on Cox's complaint in favor of Rocky Mountain Bank and Jim Brown?

¶5    Did the District Court err in granting summary judgment in favor of Brown's counterclaim against Cox?

¶6    Did the District Court err by denying Cox's motion for entry of default judgment against Rocky Mountain Bank?

¶7    Did the District Court err in barring Cox from filing new litigation "of any kind or nature" without prior judicial approval?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 In 1993, Cox was president of a Montana corporation, 1804, Inc., which purchased property located at 212 East Railroad Street in Plains, Montana. First National Bank of Plains, now the Rocky Mountain Bank of Plains (Bank), sold the property to 1804, Inc., which borrowed money from the Bank to finance the purchase. On December 2, 1996, 1804, Inc., was involuntarily dissolved by the Secretary of State, and on May 14, 1997, Cox incorporated a new entity under the identical name of 1804, Inc. The following year, the previously dissolved 1804, Inc., was reinstated by Cox under the name 1805, Inc. Thus, the reinstated entity, 1805, Inc., is the successor in interest to the *original* 1804, Inc., and is the real party in interest in this matter.

¶9 Due to the corporation's failure to make payments on the property loan, the Bank initiated a foreclosure action against the original 1804, Inc. On January 20, 1999, the Twentieth Judicial District Court for Sanders County concluded that 1804, Inc., had defaulted on its loan obligations to the Bank and ordered that the property be foreclosed. A sheriff's sale was conducted on June 10, 1999, whereby the Bank purchased the property.

¶10 On June 5, 2000, Brown purchased the property from the Bank with the understanding that Cox, as a shareholder of the original 1804, Inc., had redemption rights to the property for one year. Because the foreclosure sale occurred on June 10, 1999, the 365th day after the sale was June 9, 2000, which was a Friday. On the following Monday, June 12, 2000, Cox hand delivered a letter to the Bank demanding, among other things, an accounting for the rents, profits, issues and expenses of the foreclosed property. Cox claimed he also delivered a letter to Brown's residence, but it was the wrong residence, and therefore, Brown

3

did not receive the letter prior to initiation of this litigation. After the redemption period ended, and prior to the service of Cox's complaint, Brown made $80,000 of improvements in the property.

¶11 On September 25, 2000, Cox filed a complaint against the Bank and Brown (collectively, "Respondents") demanding that Respondents provide an accounting of the rents, profits, issues and expenses of the property for the purpose of his redemption of the property. Cox did not serve the Respondents with the complaint and summons until April 27, 2001. On May 15, 2001, Brown filed an answer and counterclaim against Cox, alleging that Cox had improperly used "the judicial process for a purpose not justified by law in instituting said Complaint . . . maliciously," wrongfully interfered with Brown's property rights, caused Brown mental distress and serious financial harm, and prayed for damages.

¶12 On May 18, 2001, Cox filed a request with the District Court that the Bank's default be entered for failing to timely respond, followed by another motion to enter default judgment against the Bank on October 29, 2001. The District Court denied Cox's motions.

¶13 Following discovery, the Respondents filed motions for summary judgment on Cox's claims, and on January 7, 2002, the District Court granted both motions, dismissing the complaint with prejudice on the grounds that Cox lacked standing to bring the action. On January 10, 2002, the District Court entered summary judgment in favor of Brown's counterclaim and granted Brown's request for general and exemplary damages. Within the judgments entered for both Respondents, the District Court permanently barred Cox, for life, from filing any new litigation of any kind or nature in any state or federal court without first

4

obtaining specific leave of the court. On April 3, 2002, the District Court entered amended judgments which narrowed Cox's lifetime ban to litigation within the Twentieth Judicial District of Montana. Cox appeals.

## STANDARD OF REVIEW

¶14    This Court's review of a district court's grant or denial of a motion for summary judgment is *de novo*. *Watkins Trust v. Lacosta,* 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16. Thus, we apply the same Rule 56, M.R.Civ.P., criteria as applied by the district court. *Fisch v. Montana Rail Link, Inc.*, 2003 MT 76, ¶ 6, 315 Mont. 13, ¶ 6, 67 P.3d 267, ¶ 6. Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Lacosta*, ¶16 (citing Rule 56(c), M.R.Civ.P.)

¶15    As a general rule, cases should be tried on the merits, and judgments by default are not favored. *Tschida v. Rowe*, 2003 MT 192, ¶ 7, 316 Mont. 503, ¶ 7, 74 P.3d 1043, ¶ 7.

## DISCUSSION

¶16    **Did the District Court err in granting summary judgment on Cox's complaint in favor of Rocky Mountain Bank and Jim Brown?**

¶17    We begin by noting that Cox's briefing in this matter is nearly unintelligible. Rule 23(a)(4), M.R.App.P., requires a party to present a concise, cohesive argument supported by citations to legal authority. Cox's failure to meet this requirement is pervasive, but we will address herein the arguments it is possible to discern.

¶18    Cox argues that he raised genuine issues of material fact and that the Respondents failed to meet their summary judgment burden because they did not provide any proof regarding which corporation was, in fact, the defendant in the foreclosure proceedings, nor did they present evidence to rebut Cox's assertions regarding who had been served with process in the foreclosure suit. Cox further argues that summary judgment should have been granted in his favor based upon his statements.

¶19    Respondents contend that summary judgment in their favor was appropriate because Cox lacked standing to bring the action. The Bank explains that Cox asserted only that he was a shareholder of the *newly incorporated* 1804, Inc., and not of 1805, Inc. Thus, because the real party in interest and debtor in the foreclosure order was the original 1804, Inc., subsequently reincorporated as 1805, Inc., only the shareholders of 1805, Inc., would have standing to redeem the foreclosed property pursuant to § 25-13-801(1)(a), MCA, which provides that the property subject to redemption may be redeemed by the judgment debtor, or, if the successor in interest to the debtor's interest is a corporation, a stockholder thereof.

¶20    Throughout the proceeding, Cox consistently maintained that he had "no recollection" as to whether he was a shareholder of 1805, Inc. During Cox's deposition on July 13, 2001, he testified:

> Q    All right. What is your relationship, Mr. Cox, with the corporation called 1805, Inc.?
> A    I don't understand the term "relationship," sir.
> Q    Are you a shareholder in a corporation called 1805, Inc.?
> A    I believe that question is unclear as to at any point in time, sir. What point in time are you requesting?
> Q    Are you, as we sit here today, on the 13th day of July, this year 2001, a shareholder in a corporation called 1805, Inc.?

6

A      I have no present recollection of the proper answer to that question.

Later in the deposition, Cox continued to "not recollect" whether he was a shareholder of

1805, Inc.:

> Q      As I understand the question - the answers you gave this morning, you did not recollect if you were a shareholder of 1804; is that a misstatement?
>
> A      I don't recall.  You would have to refer to the transcript to find out what I said.
>
> Q      Okay, I don't want to be repetitive.  Today, July 13th, 2001, are you a shareholder of the corporation called 1804, Inc.?
>
> A      I believe that I am, sir, but I'm not sure of that fact.
>
> Q      Today, July 13th, 2001, are you a shareholder of the corporation called 1805, Inc.?
>
> A      I would have to refer to 1805, Inc. and ask them.
>
> Q      Do you personally know if you're a shareholder to date?
>
> A      Do I personally know today?  I have no recollection on that point, sir.

¶21    Rule 17(a), M.R.Civ.P., requires that "[e]very action shall be prosecuted in the name of the real party in interest."  Because the original1804, Inc., was the judgment debtor in the underlying foreclosure action, that entity, later reincoporated as 1805, Inc., was the proper party in the current action.

¶22    Cox had ample opportunity to affirmatively establish that he was a shareholder of 1805, Inc., but did not do so, and further, frustrated the attempts of Respondents to simply discover the nature of his interest in the corporation.  The record reveals that Cox failed to marshal facts demonstrating he had an interest in the corporation entitled to seek redemption of the property.  The District Court properly determined that, as a matter of fact and law, 1805, Inc., was the real party in interest and that Cox had failed to establish standing to bring

7

a redemption action. Therefore, it did not err in granting summary judgment to Respondents on Cox's complaint.

¶23 **Did the District Court err in granting summary judgment in favor of Brown's counterclaim against Cox?**

¶24 In Brown's counterclaim, he contended that Cox had engaged in gross abuse of legal process by instituting his action maliciously, without probable cause and knowingly contrary to law, by making fraudulent representations and using the legal process to achieve other, unlawful purposes. Brown claimed that Cox's action had unlawfully clouded his title to property, forced him to defend Cox's action, and inflicted financial and personal loss, and sought general and exemplary damages. In granting summary judgment, the District Court noted that Cox had failed to offer any specific factual evidence in opposition to Brown's claim, and noted Brown's uncontested evidence that Cox had initially delayed service of his complaint to gain unfair advantage over Brown by waiting until Brown had completed his improvements on the property, and the uncontested assertions that Cox's actions were frivolous, without merit and vexatious. It further noted Brown's evidence regarding damages, including substantial medical expenses to Brown's hospitalization for medical problems related to Cox's actions, as well as attorney fees. The District Court granted general damages in the sum of $250,000 and exemplary damages in the sum of $500,000, the amounts requested in Brown's counterclaim. Following consideration of Cox's motion to reconsider, the District Court entered an amended judgment reducing the exemplary damage award to $50,000.

8

¶25 Cox does not challenge the awarding of damages by the District Court. He simply asserts that the District Court failed to follow statutory procedure in imposing the exemplary damage award by failing to set forth "specified information to support the award" and further, that the amount of general damages is not supported by the evidence. Neither argument is valid. Based on the record and the issues as framed by Cox, we conclude that the District Court did not err in granting summary judgment in favor of Brown's counterclaim, and entering the damage awards.

¶26 Additionally, Cox argues that the District Court erred because it: (1) considered and admitted into evidence a deposition which was not provided to Cox for review and correction; (2) considered the depositions of corporations that were not parties to the litigation; (3) amended findings of fact and conclusions of law that conflicted with the evidence presented; (4) prevented Cox from obtaining certain facts from Brown during discovery; (5) incorrectly determined that a year is 365 days even when it is a leap year; (6) improperly incorporated nonexistent and false findings; and (7) did not grant Cox's motion for summary judgment. In light of our conclusion that summary judgment was appropriate due to Cox's lack of standing, a conclusion not affected by the above issues, we need not address the merits of these issues.

¶27 **Did the District Court err by denying Cox's motion for entry of default judgment against Rocky Mountain Bank?**

¶28 Cox claims the District Court improperly denied his motion for default judgment against the Bank because the Bank failed to timely file its answer and pay the filing fee.

However, the Bank responds by explaining that it filed its answer by fax on May 16, 2001, even though the deadline was May 17, 2001, and subsequently hand delivered its original answer and filing fee to the Clerk on May 21, 2001. Furthermore, the Bank claims that it properly served Cox with its answer by mail on May 16, 2001, according to Rule 5(b), M.R.Civ.P., which stipulates that, "[s]ervice by mail is complete upon mailing."

¶29 In pertinent part, Rule 5(e), M.R.Civ.P., directs that, "[p]apers may be filed by facsimile or other electronic means, provided the original document must be filed with the clerk within five business days of the receipt of the facsimile copy or the filing will be treated as void." According to the record, the Bank: (1) filed its answer by fax on May 16, 2001; (2) followed up within five days by hand delivering the original answer and fee to the Clerk on May 21, 2001; and (3) served Cox by mailing a copy of the answer on May 16, 2001, which was complete upon mailing. Thus, we conclude that the Bank timely filed its answer and fee and that the District Court properly denied Cox's request to enter a default judgment.

¶30 **Did the District Court err in barring Cox from filing new litigation "of any kind or nature" without prior judicial approval?**

¶31 Cox asks this Court to overturn the District Court's amended order disallowing him from filing new litigation in the Twentieth Judicial District Court without prior approval and argues the order is like "killing a very small fly with a very large cannon." Cox contends that the judgment deprives him of his constitutional right to obtain judicial redress of wrongs caused by people who reside in the Twentieth Judicial District.

10

¶32 The Bank responds by arguing that the District Court properly acted within its discretion by permanently enjoining Cox from filing new litigation in the Twentieth Judicial District without prior written approval of the court. The Bank argues that Cox's conduct throughout the course of the proceedings illustrates that his suit against the Bank was frivolous and in bad faith. The Bank contends that Cox's own testimony during his deposition, his perpetual failure to serve pleadings on opposing parties, his failure to comply with the Montana Rules of Civil Procedure, and his overall disregard for the rule of law, justifies permanently barring Cox from filing any new litigation of "any kind or nature, whether by complaint, counterclaim, joinder, intervention or otherwise in Montana Twentieth Judicial District without the prior approval of such court." The Bank cites to our holding in *Grenz v. Fire & Casualty of Connecticut*, 2001 MT 8, ¶ 18, 304 Mont. 83, ¶ 18, 18 P.3d 994, ¶ 18, in support of its position that this Court has implemented sanctions beyond mere monetary sanctions.

¶33 Although we enjoined Grenz from filing any further civil appeals to this Court, it was conditioned upon Grenz's payment of a monetary sanction. *Grenz*, ¶ 18. However, in the current case, no such "condition" was placed upon the ban, thereby making it perpetual. While we agree with the Bank that the District Court has the inherent authority and ability to control matters before it, the ban here applies to "any new litigation of any kind or nature." We conclude that this language is an overly broad remedy. The Montana Constitution, Article II, Section 16, provides that the "[c]ourts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character." Therefore, we

11

reverse the portion of the District Court's judgment which permanently bars Cox from filing any new litigation in the Twentieth Judicial District without prior approval of the court.

¶34    Affirmed in part and reversed in part.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER