No. 04-361

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 183

JOHN BONILLA,

        Plaintiff and Appellant,

   v.

UNIVERSITY OF MONTANA and
THE STATE OF MONTANA,

        Defendants and Respondents.

APPEAL FROM:    The District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 2002-695,
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Thomas J. Beers, Beers Law Offices, Missoula, Montana

        For Respondents:

        Ann Brodsky, Special Assistant Attorney General, Risk Management
and Tort Defense Division, Helena, Montana

Submitted on Briefs:  September 28, 2004

Decided:  July 20, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     John Bonilla (Bonilla) appeals from the summary judgment entered on February 11, 2004, by the Fourth Judicial District Court, Missoula County, in favor of the University of Montana and the State of Montana (University). We affirm.

¶2     We restate the issues on appeal as follows:

¶3     Did the District Court err in granting summary judgment to the defendants on John Bonilla's negligence claim for injuries sustained when a University-owned chair collapsed during a ZZ Top concert?

¶4     Did the District Court err in concluding that the doctrine of *res ipsa loquitur* did not apply to Bonilla's negligence claim?

### *FACTUAL AND PROCEDURAL BACKGROUND*

¶5     On November 22, 1999, Bonilla attended a ZZ Top concert at the Adams Center Arena (Arena) at the University. Bonilla is a very large individual and weighed approximately 350 pounds at the time of the concert. Prior to the concert, Bonilla was concerned that his weight would render the University's chairs inadequate and offers that he contacted the University and spoke with Graig Gilham (Gilham). Bonilla, referring to himself as "Big John," requested permission to use his own metal folding chair in the Arena's handicap section and to gain access by one of the side entrances prior to the concert. He had previously made similar arraignments to attend public events, and had, on prior occasions, used his own chair at University functions.

¶6     On the night of the concert, Bonilla arrived at the Arena's side entrance where he was met by security personnel expecting his arrival. He was then informed that despite prior

2

arrangements made with Gilham, the University's insurance policy prohibited the use of his own chair. Bonilla expressed skepticism about the durability of the University's chair. Security personnel again advised Bonilla of the policy's requirement, but alleviated Bonilla's concerns by retrieving the chair provided by the University for his inspection before entering the Arena. Bonilla determined the chair "was at least as good and possibly a little better than [his] chair," "if anything, maybe it looked a little sturdier or reinforced than [his] own." Bonilla's own chair was returned to his vehicle, and he was escorted to the Arena's handicap section just as the concert was beginning.

¶7     During the concert, Bonilla then affixed a tape recorder he had brought by knotting a leather "boot lace" type strap to the railing, unaware that the recorder was prohibited. Security personnel did not realize that Bonilla had brought the device into the Arena nor did they initially notice him attach it to the railing. However, about halfway through the concert, security personnel detected the recorder and requested its removal. Bonilla attempted to comply, but was unable to loosen the knotted leather strap. He became frustrated and told the security personnel to "you know, like, move out of my way, I'm going to break it off," and he "gave it one big yank to break it and bring it down." As he did so, the chair provided to Bonilla collapsed beneath him, and he fell onto his back and head.

¶8     It is not clear from the record whether Bonilla knew of his injuries immediately or whether he stayed for the remainder of the concert. Several days later Bonilla sought medical assistance and was diagnosed with a coccyx fracture. However, Bonilla did not inform Gilham or anyone else with the University of his injury. The University asserts that it first learned of the incident and alleged injury when Bonilla filed his negligence action on

3

July 29, 2002, about two years and eight months after the concert. Bonilla did not file an incident report after the concert with the University, which indicates it has no record of the accident; nor did Bonilla request inspection of the chair.

¶9 Bonilla claimed in his negligence action that the University breached its duty to exercise reasonable care in the provision of a chair, considering its knowledge of his weight, and failed to advise him of any danger associated with the use of the chair. The University filed a motion for summary judgment, asserting that Bonilla had failed to present evidence of negligence, specifically, that the University had breached any duty in the provision of the chair. The District Court granted the University's motion, concluding Bonilla was owed no duty, because it was not reasonably foreseeable to the University that its chair would be subjected to the additional weight and stress of yanking a tape recorder free, even to a person of Bonilla's weight. The court also held, in the alternative, that had the University owed Bonilla the duty of care, he did not provide evidence that the University had breached the duty. Bonilla appeals therefrom.

### STANDARD OF REVIEW

¶10 Our review of a district court's summary judgment order is *de novo,* and we apply the same criteria as the district court based on Rule 56, M.R.Civ.P. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 18, 321 Mont. 99, ¶ 18, 90 P.3d 381, ¶ 18.

¶11 It is well established that a party moving for summary judgment must show a complete absence of any genuine issue as to all facts shown to be material in light of the substantive principle that entitles that party to a judgment as a matter of law. *Smith v. Kerns* (1997), 281 Mont. 114, 116, 931 P.2d 717, 718. The burden is then shifted under Rule 56

4

to the non-moving party to prove, by more than mere denial or speculation, that a genuine issue does exist. *Fisch v. Montana Rail Link, Inc.*, 2003 MT 76, ¶ 6, 315 Mont. 13, ¶ 6, 67 P.3d 267, ¶ 6.

¶12 We review a district court's legal conclusion that a moving party is entitled to judgment as a matter of law to determine whether the conclusion was correct. *Peyatt v. Moore*, 2004 MT 341, ¶ 13, 324 Mont. 249, ¶ 13, 102 P.3d 535, ¶ 13.

## DISCUSSION

¶13 **Did the District Court err in granting summary judgment to the defendants on Bonilla's negligence claim for injuries sustained when a University-owned chair collapsed during a ZZ Top concert?**

¶14 The purpose of summary judgment is to encourage judicial economy through the elimination of unnecessary trials, but summary adjudication should never be substituted for a trial if a material factual controversy exists. *Peyatt*, ¶ 14. Ordinarily, questions of negligence are poorly situated for adjudication by summary judgment, and better left for a jury to determine. *Peyatt*, ¶ 14. A party moving for summary judgment "must show a complete absence of any genuine issue as to all facts shown to be material in light of substantive principles that entitle that party to a judgment as a matter of law." *Smith,* 281 Mont. at 116, 931 P.2d at 718. In a negligence action, a plaintiff must establish: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached the duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; (4) that damages resulted. *Massee v. Thompson*, 2004 MT 121, ¶ 30, 321 Mont. 210, ¶ 30, 90 P.3d 394, ¶ 30.

¶15 Bonilla challenges the District Court's foreseeability analysis and its conclusion that the University owed him no duty of care. He contends that, pursuant to the doctrine of

5

premise liability, the University had a duty to its patrons to maintain safety in the Arena, warn of hidden or lurking dangers, and provide safe ingress and egress to and from the Arena. Alternatively, Bonilla asserts that he was owed a heightened duty because the University provided a special seating arrangement on the basis of his weight, and required him to use a University-owned chair.

¶16    In its appellate briefing, the University has conceded this point and acknowledges that it owed a duty of care to its patrons for their safety in the Arena and in providing the chair to Bonilla. Therefore, we conclude for purposes of this appeal that the University owed a duty of care to Bonilla, and turn to an analysis of the breach of that duty.

¶17    Ordinarily, the determination of whether a defendant breached a legal duty owed is a fact question for the jury, and therefore not susceptible to summary judgment, unless the evidence is undisputed or susceptible to only one conclusion by reasonable people. *Smith*, 281 Mont. at 117, 931 P.2d at 719.

¶18    Bonilla argues, as he did in the District Court, that the mere fact the chair collapsed is determinative that the University breached its duty, asserting that "the chair was not going to fall apart unless there was a problem with the chair." It is undisputed for purposes of summary judgment that the University's chair collapsed into three or four pieces simultaneous to Bonilla breaking the leather strap which was holding his tape recorder. However, aside from the fact that the chair collapsed, Bonilla offered no evidence explaining how or why the chair broke and whether it was due to any breach of duty by the University. There is no evidence indicating that any action or inaction by the University rendered the chair unsafe or of poor quality. The chair itself was not retained for inspection immediately

6

after the accident or anytime subsequent thereto, probably because it was not reported to the University. The only evidence related to this particular chair's quality is Bonilla's own testimony that it appeared of good quality, "at least as good and possibly a little better than my chair," and that it "looked even a-little-more reinforced than mine," referring to the standard metal chair he had brought to the concert.

¶19 The University presented the affidavits of Gerald Michaud (Michaud), assistant director at the University's facilities services department, and Gary Hughes (Hughes), event manager for the Arena. Michaud and Hughes described the University's procedures for assuring the safety of its chairs and for processing missing or broken chairs, and indicated that the University had no record of this incident. Further, Hughes noted that the University had selected the chairs for their durability and quality.

¶20 In light of Bonilla's inability to establish how or why the chair collapsed and whether the University played any part therein, his own statements that the chair appeared durable, and Michaud's and Hughes' testimony, the University was able to meet its burden of demonstrating the absence of material fact regarding breach of its duty of care. While Bonilla asserts that the "chair was not going to fall apart unless there was a problem with the chair," this statement is conclusory and speculative and fails to present material and substantial evidence to raise a genuine issue of material fact. *Saari v. Winter Sports*, 2003 MT 31, ¶ 15, 314 Mont. 212, ¶ 15, 64 P.3d 1038, ¶ 15. Thus, Bonilla did not meet the burden which shifted to him upon the University's showing.

¶21 We conclude that the District Court did not err in granting the University's summary judgment motion on Bonilla's negligence claim.

7

**¶22 Did the District Court err in concluding that the doctrine of *res ipsa loquitur* did not apply to Bonilla's negligence claim?**

¶23 Bonilla also argues that, under the doctrine of *res ipsa loquitur*, the chair's collapse, in and of itself, allows the inference that it broke as a result of some negligence by the University. This is the same reasoning that he asserted to support his argument that the University breached its duty of care.

¶24 Quoting Restatement (Second) of Torts § 328D, this Court has explained that an inference of negligence may arise pursuant to the doctrine of *res ipsa loquitur*, as follows:

> "(1) It may be inferred that harm suffered by the plaintiff is caused by the negligence of the defendant when:
> "(a) the event is of a kind which ordinarily does not occur in the absence of negligence;
> "(b) *other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence*; and
> "(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
> "(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
> "(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached."

*Tompkins v. Northwestern Union Trust Co.* (1982), 198 Mont. 170, 176, 645 P.2d 402, 406 (emphasis added); *see also Brothers v. General Motors Corp.* (1983), 202 Mont. 477, 482, 658 P.2d 1108, 1110. The doctrine of *res ipsa loquitur*, meaning "the thing speaks for itself," allows the jury, under certain circumstances, to infer negligence by the defendant relating to the occurrence of an event when the plaintiff is unable to establish the causal connection between the defendant's negligence and the resulting injury. However, before submission to the jury, the court must determine that the plaintiff has provided evidence satisfying subsections 1(a) through (c) of the test. Restatement (Second) of Torts § 328D

cmt. i. Without that evidence, no inference can be raised. *See Clark v. Norris* (1987), 226 Mont. 43, 48, 734 P.2d 182, 185 (regarding *res ipsa loquitur*, "[t]he mere happening of an accident, in itself, is not evidence of negligence in the ordinary negligence action. Nor is the mere fact of injury . . . standing alone").

¶25 Bonilla's bare assertion that the chair collapsed is insufficient evidence, by itself, to satisfy the Restatement's requirement under subsection 1(b) that *other responsible causes* must be "sufficiently eliminated." The requirements of this subsection are further explained in comment i of Restatement (Second) of Torts § 328D:

> The inference of negligence does not point to the defendant until the plaintiff's own conduct is eliminated as a responsible cause. Where the evidence fails to show a greater probability that the event was due to the defendant's negligence than that it was caused by the plaintiff's own conduct, the inference of the defendant's responsibility cannot be drawn. This is true not only as to the plaintiff's own contributory negligence, but also as to his innocent conduct . . . .

¶26 The evidence here regarding causation includes Bonilla's actions of yanking hard enough to break the leather strap holding his tape recorder. The evidence indicates that, out of frustration, Bonilla determined to dislodge the strap by "giv[ing] it one big yank to break it and bring it down." This action precipitated the collapse of Bonilla's chair, yet he did not provide evidence that would negate the possible causal connection between this action and the chair's collapse, or, at least, "show a greater probability that the event was due to the defendant's negligence than that it was caused by the plaintiff's own conduct." Restatement (Second) of Torts § 328D cmt. i. Bonilla's only explanation of cause is his statement that the "chair was not going to fall apart unless there was a problem with the chair." We previously noted that this is insufficient to raise a genuine issue of material fact for Bonilla's

9

negligence claim, and, for purposes of Bonilla's *res ipsa loquitur* claim, it is insufficient under these circumstances to establish the greater probability that the accident occurred due to the University's negligence and not of his own conduct, even if his conduct was considered innocent. Without such evidence, the inference of the University's negligence cannot be drawn and the District Court's entry of summary judgment was appropriate.

¶27 Affirmed.

/S/ JIM RICE

We Concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART