No. 04-279

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 213N

SCOTT SHAW,

       Plaintiff,

   and

KYLE ETCHISON,

       Plaintiff and Appellant.

   v.

ALLSTATE INSURANCE CO.,

       Defendant and Respondent.

APPEAL FROM:    The District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV 2002-386,
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Martin R. Studer, Studer Law Office, Bozeman, Montana

       For Respondent:

       Dale R. Cockrell and Sean Goicoechea, Christensen, Moore, Cockrell,
Cummings and Axelberg, Kalispell, Montana

Submitted on Briefs:  November 18, 2004

Decided:   August 30, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Kyle Etchison (Etchison) appeals from the order entered by the Eighth Judicial District Court, Cascade County, granting summary judgment to Allstate Insurance Company (Allstate) and denying Etchison's request for declaratory relief seeking coverage under an Allstate policy issued to Vicki Watson Stellingwerf (Stellingwerf). We affirm.

¶3 Did the District Court err in granting summary judgment in favor of Allstate on Etchinson's claim for coverage under Stellingwerf's policy?

### FACTUAL AND PROCEDURAL BACKGROUND

¶4 The District Court's order granting summary judgment to Allstate determined that Mindy Watson (Watson) was not an insured operator under the policy Allstate had issued to Stellingwerf, her mother. Etchison asserts that he is entitled to coverage under that policy for injuries he sustained in an accident on September 16, 1998, while a passenger in a "non-owned vehicle," that is, a vehicle not owned by Stellingwerf, but operated by Watson.

¶5 In July 1998, Stellingwerf applied for automobile insurance on her 1983 Chevy Camaro through an Allstate agent in Havre, Montana. According to her affidavit, Stellingwerf was required by the application to identify "all driving members of my

2

household and to provide information on anyone who was to be an operator of my vehicle, including information [regarding] their names, when they were licensed, driver license numbers, social security numbers and in which states they were licensed." She identified only herself, and "stated that I would be the only person to be insured under the policy." Stellingwerf did not advise Allstate, either at the time the policy was procured, or at any time prior to the subject accident, that Watson was a resident of her household or that she desired coverage for Watson.

¶6      Tim Fuerstenau, employed as a "Frontline Process Expert" by Allstate, submitted an affidavit indicating that "[t]he premiums which Allstate charges an insured are directly affected by the number and type of resident operators claimed under the Allstate auto policy. If an operator is added to an Allstate automobile insurance policy, Allstate will charge an increased premium to cover the additional risk associated with the additional operator." On the basis of the information provided by Stellingwerf, Allstate determined the premium and issued the policy to her.

¶7      On July 6, 1998, about the same time that Stellingwerf sought coverage, Watson turned eighteen years of age. She was not licensed to drive. Pursuant to a previous dissolution decree, custody of Watson had been placed with Stellingwerf, but Watson had lived elsewhere for substantial periods of time leading up to her eighteenth birthday, and, likewise, lived elsewhere thereafter. Conflicting evidence about Watson's place of residence was submitted in the proceeding. At the time of the accident, Watson was not staying at

3

Stellingwerf's home, but had personal items there and returned there immediately after the accident. She was still not licensed to drive at the time of the accident.[1]

¶8　On September 16, 1998, Watson, Etchison, and several of their friends spent the day drinking alcohol, smoking pot, and using cocaine. Becoming bored with this, the group determined to drive to the mountains near Havre in a vehicle operated by Chris Brown (Brown). Etchison believed that he was the most sober of the group and therefore, initially drove the vehicle. However, within a short time, Etchison's driving became erratic, frightening Watson, who asked Brown to instruct Etchison to pull over the vehicle. Watson then requested Brown's permission to drive the vehicle, as she considered herself the most sober. She then proceeded to drive. Watson drove a short distance when Brown yelled "watch out!" and jerked the steering wheel to avoid hitting a deer, causing Watson to lose control of the vehicle, which rolled over, injuring Etchison and the other occupants. Watson claimed that she never saw the deer nor heard Brown yell, but acknowledged that "the radio was loud" and she was "under the influence of drugs and alcohol."

¶9　Etchison and Scott Shaw (Shaw), another passenger in the vehicle, filed suit against Watson in the Twelfth Judicial District Court, Hill County, for damages they had sustained. Etchison and Shaw's medical expenses totaled approximately $17,074.16 and $6,810.31, respectively. Watson was represented by counsel for Mid-Century Insurance Company (Mid-Century), which provided coverage on Brown's vehicle. Brown's policy limited

---

[1]Watson's "residence" for purposes of coverage under Allstate's policy is disputed. However, because we decide this matter without regard to Watson's residence, resolution of this issue is unnecessary.

4

coverage on personal injury claims to $25,000 per person and $50,000 per occurrence. Mid-Century agreed to pay out its policy's limits if the parties agreed to a division of the proceeds, which was accomplished. From this, Etchison received $22,500 and Shaw received $17,500. Etchison and Shaw also filed claims with Allstate against Stellingwerf's policy, and with State Farm Insurance Company (State Farm), who insured Watson's grandparents, Gordon and Edna Teske (Teske), with whom Watson had periodically lived. Etchison and Shaw claimed that Watson was insured as a "resident" under each policy. Allstate and State Farm both denied liability and refused to defend Watson against the claims.

¶10　Following the refusal of Allstate and State Farm to defend the action, Watson confessed judgment to Etchison and Shaw in consideration of their respective covenants not to execute against her, with Watson confessing judgment to Etchison in the amount of $55,000, and to Shaw in the amount of $45,000, and assigned to them her claims to coverage against Allstate and State Farm. The District Court approved Watson's confession of judgment, and issued judgments in favor of Etchison and Shaw.

¶11　Etchison and Shaw then demanded that Allstate and State Farm satisfy the judgments. State Farm initially denied coverage, but ultimately settled with Etchison and Shaw. However, Allstate rejected the claims, asserting that Watson was not a resident operator and, therefore, not insured under its policy.

¶12　Etchison and Shaw then filed a complaint in the Eighth Judicial District Court against Allstate, pursuant to Watson's confession of judgment, and sought a declaratory judgment

5

establishing coverage. Allstate replied by requesting summary judgment, asserting that Watson was not a resident operator under Stellingwerf's policy, as she was not identified as a driver to be insured for coverage, and secondly, even if determined to be a resident of Stellingwerf's household at the time the policy was procured, Watson was not residing with her mother at the time of the accident. Additionally, Allstate argued that Etchison and Shaw were judicially estopped from asserting liability against Stellingwerf's policy, as they had previously asserted liability against the Teskes' policy based on Watson's status as a resident thereunder.

¶13 On March 8, 2004, the District Court granted Allstate's motion for summary judgment, determining that Watson was not an insured resident operator under Stellingwerf's policy, and thus, Allstate had no liability. From this order, Etchison appeals. After filing his notice of appeal, Shaw settled with Allstate and was dismissed from the action.

## STANDARD OF REVIEW

¶14 We review a summary judgment order *de novo*. *Bonilla v. University of Montana,* 2005 MT 183, ¶ 10, 328 Mont. 41, ¶ 10, 116 P.3d 823, ¶ 10. Our review of summary judgment is whether the district court correctly determined that no genuine issue of material fact existed and whether it applied the law correctly. *Bonilla*, ¶¶ 11-12.

## DISCUSSION

¶15 **Did the District Court err in granting summary judgment in favor of Allstate on Etchinson's claim for coverage under Stellingwerf's policy?**

¶16 The District Court determined, relying on the March 7, 2001, order of Magistrate Judge Richard W. Anderson in the case of *Hall v. Allstate Ins. Co.* (D. Mont. 2001) 29

6

M.F.R. 1 (00-CV-82), that Stellingwerf's failure to give notice to Allstate that Watson was a resident operator violated a condition precedent to coverage under the policy. In *Hall*, the policy at issue required the insured to give Allstate notice of all resident drivers of the household as a condition of coverage. Hall and Hirsch were common-law husband and wife, but after separation and the filing of a dissolution action, they contacted Allstate to remove Hall and his vehicle from their joint policy, which became Hirsch's sole policy. The parties later attempted reconciliation and resumed living together, but Allstate was not notified of Hall's return to resident status. Hall was then involved in an accident and sought coverage under Hirsch's underinsured coverage. Relying on the policy's requirement that "[t]o properly insure your auto, you must promptly notify us when you change your address or when any resident operator insured by your policy are [sic] added or deleted," the United States District Court reasoned that the policy "clearly and unambiguously required notice to Allstate of any other resident operators . . . [and] was more than a technicality, since both coverage and premiums were based upon the information Allstate received from its insured . . ." and held that there was no coverage under the policy for Hall's accident. *Hall*, 29 M.F.R. at 5 (emphasis omitted).

¶17    The District Court noted that Stellingwerf's policy, like the policy at issue in *Hall*, required disclosure of all resident[2] operators and further required Stellingwerf to notify

_____

[2]The policy covers and defines "Resident" to mean "a person who physically resides in your household with the intention to continue residence there. We must be notified whenever an operator becomes a resident of your household. Your unmarried dependent children while temporarily away from home will be considered residents if they intend to resume residing in your household." (Emphasis omitted.)

Allstate when an operator became a resident of the household and thus came within the provisions of the policy.[3] It concluded that Allstate "should not be held to be insuring an unlicensed driver of whom it had no notice."

¶18 Etchison first argues that *Hall* is distinguishable because *Hall* involved underinsured coverage, not the mandatory liability coverage at issue here. Secondly, he contends that Stellingwerf's failure to identify Watson when she applied for the policy, or to otherwise notify Allstate about Watson prior to the accident, should not bar coverage because the policy did not require disclosure of Watson. Although he acknowledges that disclosure of Watson as a resident operator was a condition precedent to *adding* Watson to Stellingwerf's policy, he argues that Watson did not need to be added, because Watson was a resident when the policy was originally issued by virtue of the dissolution decree. He also notes that the term "resident operator" cannot be interpreted to include Watson, because an operator needs a driver's license, which Watson did not have. For these reasons, Etchison contends that Stellingwerf had no duty to notify Allstate about Watson under the policy and, therefore, Allstate cannot deny coverage based on such a duty.

¶19 To summarize then, Etchison argues that Watson is a "resident" under the policy's definition, even though Stellingwerf did not identify her as such when applying for coverage, but that Watson was *not* a "resident operator" for purposes of the policy's requirement that

---

[3]Under a provision entitled "Duty to Report Policy Changes," the policy states "[y]our policy was issued in reliance on the information you provided concerning autos, person insured by the policy and your place of residence. To properly insure your auto, you must promptly notify us . . . whenever any resident operators insured by your policy are added or deleted. (Emphasis omitted.)

such persons be disclosed, because Watson was unlicensed, never operated Stellingwerf's insured vehicle, and did not *become* a resident during the term of the policy and thereby trigger a notice requirement, because she was already a resident.[4]

¶20　Though the policy uses the phrase "resident operator," that term is not separately defined by the policy. However, because the definition of "resident" includes a reference to "operator," we cannot conclude, as Etchison contends, that the policy extends coverage to residents who are not also operators. These words are inseparably linked by the policy. Although the question of whether Watson was a "resident" of Stellingwerf's household under the policy is a matter of dispute, the question of whether Watson was an "operator" is not in dispute. It is clear that the policy contemplates, as Etchison acknowledges, that an insured operator will be a *legal* operator–a licensed driver–which Watson was not. Though Etchison concedes that the policy tied the notice requirement to legal operators, we think the policy did more: it tied *coverage* to legal operators. Allstate requested licensing information regarding all operators, including their driver's license number, when their license was issued and the state of issuance. Stellingwerf identified only herself, and could offer no such information regarding Watson.

¶21　Though the District Court relied on *Hall*'s analysis to conclude that notice was required here, we need not reach that analysis, because Watson was not eligible for coverage under the policy in any event. Thus, we reach the same conclusion as the District Court did, under a different rationale.

---

[4]We note that the policy also extends coverage to "any resident relative," but provides no specific definition of this term beyond the definition of "resident."

9

¶22    The District Court correctly entered summary judgment for Allstate.  Affirmed.


/S/ JIM RICE

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER