05-171

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 250

DERINDA PETERSON,

        Plaintiff and Appellant,

  v..

JIM EICHHORN,

        Defendant and Appellee.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 2003-229
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        William L. Managhan, Managhan Law Firm, PLLC, Kalispell, Montana

    For Appellee:

        Jack Jenks, Molly Hartman, Phillips & Boyer, P.C., Missoula, Montana

Submitted on Briefs: November 30, 2005

Decided: July 15, 2008

Filed:

_____
          Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Derinda Peterson appeals from the order of the District Court for the Twentieth Judicial District, Lake County, denying her motion for partial summary judgment and granting Jim Eichhorn's cross-motion for summary judgment. We affirm.

## BACKGROUND

¶2    Peterson and her husband, Richard, reside on property in Lake County, Montana. Their neighbor, Bonnie Basta, resides on adjoining property to the west. A fence ("the Peterson/Basta fence") separates the two properties. Beginning in the late 1990s, Eichhorn routinely pastured horses on Basta's property pursuant to an oral agreement between Eichhorn and Basta's husband. Basta maintained this arrangement after her husband passed away in 2000.

¶3    During the spring of 2002, Eichhorn pastured ten horses, seven of which he owned, on Basta's property. About a month before the events at issue in this case, a few of the horses entered the Petersons' property through a break in the Peterson/Basta fence. The Petersons herded the horses back into Basta's pasture, and Richard repaired the break. In addition, Eichhorn installed an electric fence along the Peterson/Basta fence.

¶4    Nevertheless, on April 20, 2002, two or three of Eichhorn's horses again entered the Petersons' property, this time at a point along the northern half of the Peterson/Basta fence where both the fence and the electric fence were broken. The Petersons used oats and a rope to lead the horses back into Basta's pasture. Thereafter, Richard temporarily secured the Peterson/Basta fence.

2

¶5 The Petersons then decided to inform Basta of what had just transpired. From their property, they crossed the Peterson/Basta fence and entered Basta's pasture. They then opened a metal gate to access Basta's gravel driveway, which ran alongside the pasture, and proceeded up the driveway. The driveway also passed by a separately fenced corral connected to the pasture. Upon reaching a bale of hay, the Petersons tossed some of the hay over the fence to the horses, hoping that this would keep them away from the Peterson/Basta fence. Thereafter, the Petersons continued up the driveway to Basta's house and informed her that some of the horses had again escaped from her pasture onto their property.

¶6 On their way back to their property, the Petersons decided to stop at the corral and toss out more hay for the horses. While doing so, one of the horses in the corral—a mare named Hannah which was owned by Eichhorn—reached over the corral fence and bit Peterson on her breast. It is undisputed that Hannah was not one of the horses that had escaped earlier in the day onto the Petersons' property.

¶7 Peterson filed suit against Eichhorn and Basta on December 11, 2003, asserting claims of negligence, strict liability for an abnormally dangerous domestic animal, and punitive damages. The injuries alleged and the damages sought by Peterson related only to the horse bite—e.g., "expenses for medical treatment" and "course of life damages"— and not to any costs incurred as a direct result of the horses' breaking through the Peterson/Basta fence and entering the Petersons' property. Basta and Peterson eventually settled, and the claims against Basta were dismissed with prejudice on November 22, 2004. Accordingly, we discuss Peterson's allegations only as they relate to Eichhorn.

¶8 Under her negligence claim, Peterson alleged that Eichhorn owed her "a duty to exercise reasonable care in the keeping of domestic animals to prevent the horse from causing foreseeable injuries to persons in Plaintiff's position"; that "[i]t was reasonably foreseeable that the horse owned and kept by [Eichhorn] would bite Plaintiff"; that Eichhorn "breached [his] duty in the keeping of domestic animals by failing to take reasonable measures to protect Plaintiff from being injured by the horse"; and that Eichhorn's alleged negligence was the actual and proximate cause of Peterson's injuries. Under her strict liability claim, Peterson alleged that Eichhorn was the owner and keeper of "a domestic animal which had an abnormally dangerous tendency to bite people"; that Eichhorn "knew or should have known that one of the horses [he] owned and kept had an abnormally dangerous tendency to bite people"; and that Eichhorn was strictly liable for Peterson's injuries. Lastly, Peterson alleged that she was entitled to punitive damages.

¶9 Peterson filed a motion for partial summary judgment on the issue of Eichhorn's liability. Eichhorn filed a cross-motion for summary judgment on all of Peterson's claims. The District Court heard arguments on the motions. Thereafter, on January 7, 2005, the court denied Peterson's motion and granted Eichhorn's motion. The court entered judgment on March 29, 2005, dismissing Peterson's claims with prejudice. The court stated that Peterson shall recover nothing from Eichhorn and that Eichhorn shall recover costs from Peterson. Peterson now appeals.

¶10 Additional facts are set forth below where relevant.

**ISSUES**

¶11 We restate the issues on appeal as follows:

1. Did the District Court err in granting summary judgment in favor of Eichhorn on the issue of strict liability for an abnormally dangerous domestic animal?

2. Did the District Court err in granting summary judgment in favor of Eichhorn on the issue of negligence?

3. Did the District Court err in granting summary judgment in favor of Eichhorn on the issue of punitive damages?

## STANDARD OF REVIEW

¶12 We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court. *Hughes v. Lynch*, 2007 MT 177, ¶ 7, 338 Mont. 214, ¶ 7, 164 P.3d 913, ¶ 7. Rule 56(c) provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, the moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Hadford v. Credit Bureau of Havre, Inc.*, 1998 MT 179, ¶ 14, 289 Mont. 529, ¶ 14, 962 P.2d 1198, ¶ 14. The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences are to be drawn therefrom in favor of the party opposing summary judgment. *Our Lady of the Rockies, Inc. v. Peterson*, 2008 MT 110, ¶ 14, 342 Mont. 393, ¶ 14, 181 P.3d 631, ¶ 14.

¶13 Once the moving party has met its burden, the party opposing summary judgment must present substantial evidence, as opposed to mere denial, speculation, or conclusory

statements, raising a genuine issue of material fact. *Hadford*, ¶ 14; *Klock v. Town of Cascade*, 284 Mont. 167, 174, 943 P.2d 1262, 1266 (1997). The determination that the moving party is or is not entitled to judgment as a matter of law is a legal conclusion, which we review for correctness. *Hughes*, ¶ 8.

## DISCUSSION

¶14 ***Issue 1. Did the District Court err in granting summary judgment in favor of Eichhorn on the issue of strict liability for an abnormally dangerous domestic animal?***

¶15 Peterson relies on § 509 of the *Restatement (Second) of Torts* (1977), which states:

(1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.

(2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know.

According to comment g, "[i]t is not necessary to the application of the rule stated in this Section that the possessor of the domestic animal know of its abnormally dangerous propensities; it is enough that he has reason to know of them." *Restatement (Second) of Torts* § 509 cmt. g.

¶16 The District Court noted that "a horse by nature possesses the ability, if not the propensity, to bite and kick." The court decided that "such dangers [are] normal for its class or category." On appeal, Peterson maintains that the District Court erroneously "dismissed the evidence" concerning Hannah's "dangerous tendency to bite" which, in Peterson's view, was "abnormal for horses in general." Specifically, Peterson contends that Hannah bit "at least four" other people before biting Peterson. Peterson further

6

asserts that Hannah's original owners warned Eichhorn that Hannah tried to bite when they fed her. Additionally, although Eichhorn testified that in his 88 years of experience with horses, he had seen only one horse bite someone, Peterson claims that Eichhorn was present when Hannah allegedly bit Basta's brother-in-law on the hand. In essence, Peterson contends that genuine issues of material fact exist with respect to whether Hannah had a dangerous propensity—to bite—which was abnormal for a mare and whether Eichhorn knew or had reason to know of this allegedly abnormally dangerous propensity.

¶17 At the outset, we note Eichhorn's arguments concerning the applicability of § 509. He points out that § 509 has not been adopted in Montana and is not binding authority. While this is true, it is also true that we have adopted other sections of the *Restatement*. *See e.g. Sunburst School Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 36, 338 Mont. 259, ¶ 36, 165 P.3d 1079, ¶ 36 (adopting *Restatement (Second) of Torts* § 929 and cmt. b); *Crisafulli v. Bass*, 2001 MT 316, ¶ 23, 308 Mont. 40, ¶ 23, 38 P.3d 842, ¶ 23 (adopting *Restatement (Second) of Torts* § 316); *First Bank (N.A.)-Billings v. Clark*, 236 Mont. 195, 206, 771 P.2d 84, 91 (1989) (adopting *Restatement (Second) of Torts* § 46, cmt. j); *Brandenburger v. Toyota Motor Sales, U.S.A., Inc.*, 162 Mont. 506, 513-14, 513 P.2d 268, 272-73 (1973) (adopting the language of *Restatement (Second) of Torts* § 402A); *see also Leichtfuss v. Dabney*, 2005 MT 271, ¶¶ 39-42, 329 Mont. 129, ¶¶ 39-42, 122 P.3d 1220, ¶¶ 39-42 (citing various sections of the *Restatement (Third) of Property, Servitudes* as persuasive authority). Thus, Eichhorn's observation that § 509 has not been adopted in Montana and is not binding authority does not end our analysis.

¶18 That being said, we conclude that this is not an appropriate case in which to consider and adopt § 509. The record before us is utterly void of any evidence, and Peterson's briefing is likewise wholly deficient of legal authority, on the issues of (1) whether Hannah's "tendency to bite," assuming she has one, amounts to a "dangerous propensity," (2) if Hannah does have a "dangerous propensity" for biting, whether that propensity is "abnormal to [her] class," and (3) whether Eichhorn knew or had reason to know not that Hannah had bitten in the past, but that she had a "dangerous propensity abnormal to her class." In this regard, we note that Peterson, who also had extensive experience with horses, admitted in the District Court that horses are "unpredictable" and that "you never know, with a strange horse, how they're going to react." Peterson also concedes on appeal that "horses are capable of biting." She opines, however, that "it is unusual for a mare to bite." Yet, "unusual" does not necessarily equate with "abnormal" as contemplated under § 509. Peterson has not shown with substantial evidence that Hannah's behavior was anything other than the behavior of a typical horse as described by Peterson herself.

¶19 Peterson contends that "Eichhorn provides no answer for Peterson's argument that a horse can have an abnormally dangerous tendency to bite compared to horses in general." She claims that "[m]ost horses do not intentionally bite people." Yet, this conclusory and speculative statement does not constitute substantial evidence to raise a genuine issue of material fact. *See e.g. Bonilla v. University of Montana*, 2005 MT 183, ¶ 20, 328 Mont. 41, ¶ 20, 116 P.3d 823, ¶ 20.

¶20 Peterson's bald assertions that Hannah's behavior rose to the level of a "dangerous propensity abnormal to her class" are insufficient to withstand a motion for summary judgment. *See* M. R. Civ. P. 56(e); *Hughes v. Lynch*, 2007 MT 177, ¶ 19, 338 Mont. 214, ¶ 19, 164 P.3d 913, ¶ 19. Accordingly, we conclude this is not an appropriate case in which to consider and adopt § 509 and that Eichhorn was entitled to judgment as a matter of law on Peterson's § 509 claim.

¶21 We note the District Court's reasoning that a propensity to bite is "normal" for Hannah's class. Although we agree with Peterson that "a horse might have a tendency to bite that is abnormal for what one would expect of horses," Peterson has failed to produce any evidence or legal authority that Hannah is such a horse, i.e., that Hannah's biting constitutes a "dangerous propensity abnormal to her class" as contemplated by § 509. We uphold a district court's judgment if the court reaches the correct result, regardless of the court's reasoning. *Clark v. Eagle Systems, Inc.*, 279 Mont. 279, 286, 927 P.2d 995, 999 (1996); *Richardson v. Corvallis Public School Dist. No. 1*, 286 Mont. 309, 312, 950 P.2d 748, 750 (1997).

¶22 ***Issue 2. Did the District Court err in granting summary judgment in favor of Eichhorn on the issue of negligence?***

¶23 Negligence is the failure to use the degree of care that an ordinarily prudent person would have used under the same circumstances. *Barr v. Great Falls Int'l Airport Authority*, 2005 MT 36, ¶ 41, 326 Mont. 93, ¶ 41, 107 P.3d 471, ¶ 41. To maintain an action in negligence, the plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was

9

the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted. *See Willden v. Neumann*, 2008 MT 236, ¶ 14, ___ Mont. ___, ¶ 14, ___ P.3d ___, ¶ 14; *Bonilla v. University of Montana*, 2005 MT 183, ¶ 14, 328 Mont. 41, ¶ 14, 116 P.3d 823, ¶ 14; *Massee v. Thompson*, 2004 MT 121, ¶ 30, 321 Mont. 210, ¶ 30, 90 P.3d 394, ¶ 30.

¶24 As noted, actionable negligence arises only from the breach of a legal duty. Therefore, in order for there to be a genuine issue of material fact in a negligence case, there must be a duty imposed on the defendant and allegations which, if proven, would support a finding of a breach of the duty. *Richardson v. Corvallis Public School Dist. No. 1*, 286 Mont. 309, 313, 950 P.2d 748, 751 (1997). Furthermore, although negligence actions ordinarily involve factual issues which make summary judgment inappropriate, if the plaintiff fails to offer proof on any one of the four elements of negligence, then summary judgment in favor of the defendant is proper. *Singleton v. L.P. Anderson Supply Co.*, 284 Mont. 40, 43-44, 943 P.2d 968, 970 (1997); *accord Fabich v. PPL Montana, LLC*, 2007 MT 258, ¶ 23, 339 Mont. 289, ¶ 23, 170 P.3d 943, ¶ 23.

**Fence Theory**

¶25 The District Court rejected Peterson's contention that Eichhorn was strictly liable under §§ 81-4-215 and -307(1), MCA, for all injuries resulting from the horses' breaking through the Peterson/Basta fence on April 20, 2002. The court concluded that these statutes were inapplicable in light of the damages claimed by Peterson.

¶26 Section 81-4-215, MCA, states:

> If any ... horses ... break into any enclosure and the fence of the enclosure is legal, as provided in 81-4-101, the owner of the animals is liable for damages to the owner or occupant of the enclosure if the owner or

10

person in control of the animals was negligent. This section may not be construed to require a legal fence in order to maintain an action for injury done by animals running at large contrary to law. In the case of trespassing animals in a herd district, the liability and damage provisions of 81-4-307 apply.[1]

Section 81-4-307(1), MCA, in turn, states in relevant part: "If an animal referred to in 81-4-306"—which includes horses—"wrongfully enters the premises of a person within a herd district, the owner or person in control of the animal is liable for care and feeding of the animal and for any damages caused by the animal."

¶27    On appeal, Peterson again argues that §§ 81-4-215 and -307(1), MCA, "pose strict liability on Eichhorn." Peterson contends that "liability is triggered when a horse breaks through a fence." Yet, by the plain language of these statutes—which refer to animals that "break into" and "wrongfully enter[ ]" another person's premises or enclosure— Eichhorn's liability would extend only to damages caused by the horses that escaped from Basta's pasture, and Peterson has not alleged any damages caused by the escaping horses. Rather, she alleged in her complaint that "[t]his cause of action arises from a horse bite." Moreover, she alleged that she had suffered injuries and incurred damages in the form of "expenses for medical treatment," "physical pain and suffering," "mental anguish," and "course of life damages." None of these injuries have anything to do with damages caused by the escaped horses. In point of fact, the injuries alleged by Peterson were caused when, "[o]n her way back to her house, Plaintiff stopped to throw some hay

---

¹ This is the 2003 version of § 81-4-215, MCA. Although Peterson's injury occurred on April 20, 2002, the 2003 Legislature amended § 81-4-215, MCA, and stated that the amendments applied to actions brought on or after April 21, 2003. *See* Laws of Montana, 2003, ch. 431. Peterson commenced this action on December 11, 2003.

11

to the horses," at which time she was bitten by Hannah. The record establishes (and the parties do not dispute) that Hannah was not one of the horses that had trespassed onto Peterson's property. The record also reflects that, at the time Peterson was bitten, the escaped horses had been herded back into Basta's pasture and that the broken portion of the Peterson/Basta fence had been secured. In this regard, we note that counsel for Peterson conceded during oral argument in the District Court that §§ 81-4-215 and -307(1), MCA, do not apply to animals "inside their own pastures."

¶28 In light of these undisputed facts and the stated basis of this lawsuit, §§ 81-4-215 and -307(1), MCA, seem to be inapplicable to the case at hand. Notwithstanding, Peterson attempts to weave a scenario in which Eichhorn's supposed liability under these statutes for his horses' wrongful entry onto the Petersons' property establishes his liability for the injuries later caused by Hannah alongside the corral. Peterson's theory is that "Eichhorn's trespassing horses set in motion a foreseeable chain of events that placed Peterson in a position where there was a high likelihood that Hannah would bite her." This scenario commences with two or three of Eichhorn's horses breaking through the Peterson/Basta fence onto Peterson's property and ends some time later with Peterson standing on Basta's property alongside the corral gratuitously feeding another of Eichhorn's horses (Hannah), at which point she is bitten. Peterson cites no authority for such an extension of liability under these statutes, and the plain language of the statutes does not support Peterson's argument. Accordingly, we reject this theory.

**Ordinary Care Theory**

12

¶29 The focus in this case, therefore, is properly on the corral and what transpired there, regardless of the scenario with the broken fence and the escaping horses. In this regard, Peterson cites § 27-1-701, MCA, which states:

> Except as otherwise provided by law, everyone is responsible not only for the results of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has willfully or by want of ordinary care brought the injury upon himself.

This statute "provides the general standard against which negligence or due care can be measured." *Larson-Murphy v. Steiner*, 2000 MT 334, ¶ 92, 303 Mont. 96, ¶ 92, 15 P.3d 1205, ¶ 92. Based on § 27-1-701, MCA, Peterson contends that Eichhorn had a "duty of ordinary care in the management of his horses." According to Peterson, this duty required Eichhorn to keep the horses "as a reasonably prudent horse owner would under the circumstances."

¶30 The District Court decided that "Peterson's injury resulted from her action in entering Basta's property and feeding not only the horses that entered her property but also the horses that remained on Basta's property, including the horse that bit her." Thus, the court reasoned, "no legal duty exists due to the exception within Section 27-1-701, MCA." As noted above, that exception states that everyone is responsible for an injury occasioned to another by his want of ordinary care "except so far as the latter has willfully or by want of ordinary care brought the injury upon himself." Essentially, the District Court found that Peterson was contributorily negligent and that her negligence relieved Eichhorn of any legal duty he had under § 27-1-701, MCA. In this respect, the District Court erred.

13

¶31 Under the old contributory negligence rule, a plaintiff could not recover if the plaintiff were negligent in any degree. *Reed v. Little*, 209 Mont. 199, 205, 680 P.2d 937, 940 (1984). Montana, however, has adopted a comparative negligence scheme. *See* § 27-1-702, MCA. Under that scheme, a plaintiff's contributory negligence is a defense to the charge of negligence, but contributory negligence does not bar the plaintiff from recovering damages "if the contributory negligence was not greater than the negligence of the person or the combined negligence of all persons against whom recovery is sought." Section 27-1-702, MCA. In other words, recovery is barred only if the plaintiff is found to be greater than 50 percent negligent. *Giambra v. Kelsey*, 2007 MT 158, ¶ 45, 338 Mont. 19, ¶ 45, 162 P.3d 134, ¶ 45.

¶32 Furthermore, even when a defendant is negligent as a matter of law, the issue of contributory negligence on the part of the plaintiff and the degree of comparative negligence, if any, is normally an issue for the jury or fact-finder to resolve. *Pierce v. ALSC Architects, P.S.*, 270 Mont. 97, 107, 890 P.2d 1254, 1260 (1995); *see also Giambra*, ¶ 51 (stating that Montana's comparative negligence scheme requires "the fact-finder" to consider the negligence of the claimant, injured person, defendants, and third-party defendants and apportion negligence liability accordingly). Whether a plaintiff was contributorily negligent is a question for the fact-finder, unless reasonable minds could not draw different conclusions from the evidence. *See e.g. Stenberg v. Beatrice Foods Co.*, 176 Mont. 123, 126-27, 576 P.2d 725, 727-28 (1978); *Hart-Anderson v. Hauck*, 239 Mont. 444, 447-48, 781 P.2d 1116, 1117-18 (1989).

¶33    On the facts before us, we conclude that reasonable minds could draw different conclusions from the evidence on the question of Peterson's contributory negligence and the degree of comparative negligence. Accordingly, the District Court erred in concluding that contributory negligence on Peterson's part relieved Eichhorn of any legal duty he had under § 27-1-701, MCA.

¶34    Nevertheless, we conclude that the District Court reached the correct result. Assuming, arguendo, that Eichhorn had the duty alleged by Peterson to exercise ordinary care in the keeping of Hannah so as to prevent the mare from causing foreseeable injuries to persons in Peterson's position, the question becomes whether Peterson presented evidence sufficient to create a genuine issue of material fact that would necessitate a trial on Eichhorn's alleged breach of that duty. *Bonilla v. University of Montana*, 2005 MT 183, ¶ 17, 328 Mont. 41, ¶ 17, 116 P.3d 823, ¶ 17 ("Ordinarily, the determination of whether a defendant breached a legal duty owed is a fact question for the jury, and therefore not susceptible to summary judgment, unless the evidence is undisputed or susceptible to only one conclusion by reasonable people."). We resolve that question in the negative.

¶35    The undisputed facts are that at the time she was bitten, Peterson was returning home after having advised Basta of the horses' escape. At that point in time, the escaped horses were back in Basta's pasture, the fence had been secured, the horses had been given some hay, and Basta had been notified. Whatever urgency had been generated by the escape was now resolved and over. Notwithstanding, Peterson took the gratuitous step of stopping to throw some hay to Hannah and the other horses in the corral.

(Peterson admitted that neither Basta nor Eichhorn asked her to do this.) Although Peterson explains that she was feeding the horses so that they would stay on Basta's property, it is undisputed that Hannah was not one of the two or three horses that had entered the Petersons' property earlier in the day.

¶36 Assuming, as we do, that Eichhorn had a duty to exercise reasonable care in the keeping of Hannah, Peterson's theory of breach is that Eichhorn failed to take the steps a reasonably prudent horse owner would have taken under the circumstances to prevent Hannah from biting a person standing alongside the corral gratuitously throwing hay to her and the other horses. Yet, Peterson has not presented substantial evidence indicating that Hannah was not, at that moment, being kept by Eichhorn in a reasonably safe condition so as to safeguard Peterson from this injury. In other words, Peterson has not established the existence of a genuine issue of material fact as to whether Eichhorn's keeping Hannah in the corral on Basta's property as he did fell below the degree of care that Peterson alleges (and we assume, arguendo) he owed her. Peterson has merely proffered the conclusory assertion that Eichhorn breached the duty of care. This is wholly insufficient to withstand summary judgment. *Klock v. Town of Cascade*, 284 Mont. 167, 174, 943 P.2d 1262, 1266 (1997) ("In order to meet its burden, the party opposing the motion must present substantial evidence, not mere denial, speculation, or conclusory statements.").

¶37 Focusing on the evidence presented to the District Court on summary judgment and assuming, arguendo, that Eichhorn had an ordinary duty of care in the maintenance of Hannah, we conclude that reasonable minds could not differ. Peterson has failed to

present substantial evidence that would establish Eichhorn breached this duty under the circumstances here. That being the case, summary judgment on Peterson's negligence claim was proper. As noted above, this Court upholds a district court's judgment if the court reaches the correct result, regardless of the court's reasoning. *Clark*, 279 Mont. at 286, 927 P.2d at 999; *Richardson*, 286 Mont. at 312, 950 P.2d at 750. We therefore affirm the District Court's order granting summary judgment in favor of Eichhorn on this claim.

¶38 ***Issue 3. Did the District Court err in granting summary judgment in favor of Eichhorn on the issue of punitive damages?***

¶39 Given our resolution of Issues 1 and 2, we need not address Issue 3. *See Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 20, 301 Mont. 240, ¶ 20, 8 P.3d 778, ¶ 20 ("[P]unitive damages are merely a component of recovery of the underlying civil cause of action."); § 27-1-220(1), MCA.

## CONCLUSION

¶40 We conclude that the District Court correctly determined that no genuine issues of material fact exist and that Eichhorn was entitled to judgment as a matter of law on all of Peterson's claims. We accordingly affirm the District Court's judgment.

¶41 Affirmed.

/s/ _____
Justice

17

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

18