DA 07-0418

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 175

ANGELA LARCHICK, Conservator of
JORDAN LARCHICK, a minor,

      Plaintiff and Appellant,

    v.

DIOCESE OF GREAT FALLS-BILLINGS,
d/b/a BILLINGS CATHOLIC SCHOOLS,
a/k/a BILLINGS CENTRAL HIGH SCHOOL,

      Defendants, Appellees and Cross-Appellants.

| | |
|---|---|
| APPEAL FROM: | District Court of the Thirteenth Judicial District, In and For the County of Yellowstone, Cause No. DV 05-0761 Honorable G. Todd Baugh, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Elizabeth A. Halverson; Elizabeth A. Halverson, P.C.; Billings, Montana

            James R. Halverson; Halverson & Gilbert, P.C.; Billings, Montana

      For Appellees:

            Leonard Hudson Smith; Crowley Fleck PLLP; Billings, Montana

                    Submitted on Briefs: December 10, 2008

                                Decided: May 19, 2009

Filed:

            _____
                           Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Angela Larchick, Conservator for Jordan Larchick, a minor (collectively "Larchick"), brought this negligence action against the Diocese of Great Falls-Billings, d/b/a Billings Catholic Schools, a/k/a Billings Central Catholic High School (collectively the "Diocese") to recover damages for injuries Jordan sustained while participating in P.E. class at Billings Central Catholic High School ("Central"). A jury sitting in the Thirteenth Judicial District Court, Yellowstone County, found in favor of the Diocese. Following the verdict, Larchick filed several post-trial motions, including a motion for a new trial on the basis of newly discovered evidence and for fees and costs or entry of judgment on liability. The District Court denied Larchick's motions. Larchick appeals. The Diocese cross-appeals from several of the District Court's rulings, including the District Court's award of partial summary judgment in favor of Larchick on the issue of intervening cause and comparative negligence. For the reasons set forth below, we affirm in part, reverse in part, and remand for a new trial.

¶2 **Larchick raises the following issues on appeal, restated as follows:**

¶3 I. Did the District Court err in denying Larchick's motion for a new trial under § 25-11-102(4), MCA, on the basis of newly discovered evidence?

¶4 II. Did the District Court err in denying Larchick's motion for a mistrial?

¶5 III. Did the District Court err in denying Larchick's motion for a new trial under § 25-11-102(1), (7), MCA, on the basis of the District Court's exclusion of post-accident evidence which allegedly shows that defense counsel solicited and relied upon false affidavits?

¶6 IV. Did the District Court err in denying Larchick a new trial or entry of default judgment on liability on the basis of defense counsel's alleged misconduct?

2

¶7      V. Did the District Court err in denying Larchick's motion for costs and fees on the basis of defense counsel's alleged misconduct?

¶8      **The Diocese raises the following issues on cross-appeal, restated as follows:**

¶9      VI. Did the District Court err in concluding that Powers's act of striking Larchick was foreseeable as a matter of law and not an intervening force that severed the causal chain?

¶10      VII. Did the District Court err in granting Larchick's motion *in limine* to exclude all evidence, argument, or suggestion at trial that Powers was at fault for Larchick's injury?

¶11      VIII. Did the District Court err in granting Larchick's motion for partial summary judgment on the issue of comparative negligence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶12      On February 6, 2004, Larchick was injured while participating in a lacrosse game during P.E. class as a freshman at Central. While the facts leading up to Larchick's injuries are somewhat disputed, it is undisputed that Larchick sustained immediate and permanent vision loss in his right eye when he was hit with a lacrosse stick by another student, Alex Powers ("Powers"). The Diocese alleged that Larchick precipitated the strike by hitting Powers on the shin with his lacrosse stick and that the incident occurred "away from the play of the game." Powers disclaimed any intent to injure Larchick, although several students stated that it appeared to them as if Powers's actions were intentional. The game, described as "soft lacrosse" by the Diocese, was held in Central's gymnasium. Prior to participating in the game, students were instructed by P.E. teacher John Hardenbrook ("Hardenbrook") that physical contact (a.k.a. body checking) was not allowed. The students were not provided with helmets, face guards, or other protective equipment.

¶13    Larchick filed this negligence action in July of 2005, after the completion of his sophomore year at Central. The Diocese was not named as a defendant in the original complaint. Larchick subsequently moved to Wyoming to live with his grandparents and attend school. In February of 2006, the complaint was amended to include the current defendants. Larchick maintained that the school negligently supervised, negligently instructed, or negligently failed to provide protective equipment and requested punitive damages. The Diocese sought to defend, in part, on a theory that Larchick was comparatively negligent and that Powers's act of striking Larchick was an intervening cause.

¶14    Central's Principal, Sheldon Hanser ("Hanser"), was deposed in December 2005. During the deposition, Hanser stated that the school did not blame Larchick for his injures. Hanser also stated that the school did not blame Powers for Larchick's injuries. Thereafter, Larchick moved for partial summary judgment on the Diocese's affirmative defenses of comparative fault and intervening cause. Larchick argued that there was no evidence to support a comparative fault theory. In support of this position, Larchick cited Hanser's statement that he did not blame Larchick for his injuries. The District Court granted Larchick's motion, concluding that there was no evidence that Larchick breached any duty owed to the defendants or acted negligently. The District Court also granted Larchick's motion for partial summary judgment on the issue of intervening cause. The District Court concluded that it was "foreseeable that intentional or reactive striking" would occur and that Powers's strike of Larchick was not an intervening cause. In the

4

same order, the District Court granted the Diocese's motion for partial summary judgment on Larchick's punitive damages claim.

¶15 Prior to trial, Larchick filed a motion *in limine* to exclude evidence, argument, or suggestion at trial that Powers was at fault. Larchick cited Hanser's deposition testimony in which Hanser stated that the school did not blame Powers for Larchick's injuries. Larchick also noted that Hanser was deposed for a second time in February 2007, this time as the individual designated by the Diocese to speak on its behalf under M. R. Civ. P. 30(b)(6). During this deposition, Hanser stated that his December 2005 testimony was still true and correct. The District Court granted Larchick's motion *in limine*, and thereby excluded evidence at trial that Powers was at fault.

¶16 A jury trial was held on February 22 through March 2, 2007. A key issue at trial was whether Hardenbrook was present in the gymnasium at the time Larchick was injured. Hardenbrook testified that he was present but that he did not see the incident occur because his back was turned when it happened. Several students in Hardenbrook's P.E. class on the day of the incident testified that he was in the gymnasium, although other students, including Larchick, testified that Hardenbrook was not. Also significant on appeal is defense counsel's alleged reference to a collateral source during the trial. On the fifth day of the trial, Angela Larchick (Larchick's mother) testified that she always thought Hardenbrook was not in the gym and that it troubled her and weighed on her and that she did not want her son in an environment she could not trust. On cross-examination, defense counsel asked Angela Larchick the following question: "When you filed your first lawsuit, you didn't even sue the school, did you?" In response, Angela

Larchick stated that she did not know anything about that. Larchick's counsel moved for an immediate mistrial, claiming that defense counsel, in alluding to superseded pleadings, impermissibly referenced a collateral source of recovery. Defense counsel suggested that the reference did not imply anything and that Larchick could have sued any number of people. The District Court denied Larchick's motion for a mistrial. On a separate matter, Larchick also claimed that the Diocese violated the District Court's Post Final Pre-trial Order excluding evidence, argument, or suggestion that Powers was at fault for Larchick's injuries. Larchick claimed the Diocese violated the order by suggesting at trial that Powers may have been responsible for Larchick's injuries.

¶17 On May 2, 2007, the jury returned a verdict in favor of the Diocese. The jury did not reach issues of causation or damages, determining only that the Diocese was not negligent. Following the verdict, one of Larchick's attorneys, Elizabeth Halverson ("Halverson"), received a phone call from a man who identified himself as "John Peterson." The man told Halverson that he was Hardenbrook's friend and that he was very concerned about Hardenbrook. He also told Halverson that Hardenbrook was upset about the trial and that Hardenbrook told him ("Peterson") that he had lied under oath about his presence in the gymnasium when Larchick was injured. In sum, Hardenbrook evidently told Peterson who told Halverson that he had been pressured to say he was in the gymnasium when he was not. Halverson received the phone call from "John Peterson" on April 25, 2007. Halverson subsequently obtained a copy of the official telephone record, which indicated that the call had been placed from Hardenbrook's cell phone.

¶18     Halverson notified the District Court about the phone call shortly thereafter.  The District Court held an emergency hearing on April 27, 2007.  During the hearing, Halverson told the court about the phone call and produced a copy of the phone record. The District Court scheduled a hearing on the issue of Hardenbrook's testimony and issued subpoenas for Hardenbrook and "John Peterson" to testify.  The District Court also granted the Diocese's motion for a protective order and sealed all information pertaining to the issues raised at the hearing.

¶19     A hearing on Hardenbrook's testimony was conducted on May 7, 2007. Hardenbrook was present and represented by his own counsel.  Hardenbrook testified during the hearing but invoked his Fifth Amendment privilege against self-incrimination to the majority of the questions.  Essentially, Hardenbrook would only confirm that he was in possession of his cell phone the day Halverson received the phone call from "Mr. Peterson."  These proceedings were also sealed by the District Court.

¶20     Thereafter, Larchick filed an amended motion for a new trial "based upon the new evidence showing that contrary to all earlier evidence from Defendant, its teacher John Hardenbrook was not present in the gym when [Larchick] was injured, was pressured to testify falsely that he was present, and has told others since trial that his testimony was not truthful." (Emphasis omitted.)  Larchick introduced an affidavit from Halverson in support of the motion for a new trial.  Larchick also argued that defense counsel engaged in misconduct by soliciting false affidavits which stated that Hardenbrook was in the gymnasium at the time Larchick was injured.  Although these affidavits were never introduced to the jury, Larchick argued that the defense relied upon them during the trial.

Larchick also claimed that a negative inference could be drawn from Hardenbrook's refusal to testify at the hearing, and that independent evidence in the record supported the inference. In earlier post-trial motions, Larchick also requested fees, costs, and a new trial or entry of default judgment on liability on the basis of defense counsel's alleged misconduct. The District Court denied Larchick's post-trial motions on May 17, 2007.

¶21 Following the denial of the post-trial motions, Larchick filed an application for a writ of supervisory control to unseal the portions of the transcript relating to Hardenbrook's testimony at the hearing on May 7, 2007. We granted the application and ordered the District Court to vacate its order sealing the partial transcript. Larchick filed this timely appeal from the judgment entered on the jury verdict, the District Court's denial of the motion for a mistrial, the District Court's Order and Decision on May 17, 2007, denying Larchick's post-trial motions, and the District Court's October 27, 2006, order granting summary judgment to the Diocese on Larchick's punitive damages claim. However, we determined that the District Court's oral ruling on March 1, 2007, denying Larchick's motion for a mistrial and its May 17, 2007, Ruling on Post-Trial Motions did not provide this Court with a sufficient basis to conduct a meaningful review of several of the issues raised by Larchick on appeal. Accordingly, we remanded this case to the District Court "for the limited purpose of allowing the District Court, at its earliest convenience, to enter specific findings of fact and conclusions of law" on the following issues:

1. Is Larchick entitled to a new trial on the basis of newly discovered evidence under § 25-11-102(4), MCA?

2. Is Larchick entitled to a new trial under § 25-11-102(1), (7), MCA, based on the District Court's exclusion of post-accident evidence which allegedly shows that defense counsel solicited and relied upon false affidavits?
3. Is Larchick entitled to costs, fees, and a new trial or entry of default judgment on liability based on defense counsel's alleged misconduct?
4. Did the District Court err in denying Larchick's motion for a mistrial?

¶22 The District Court addressed these issues in its Response to Remand on September 26, 2008. The District Court concluded that Larchick was not entitled to a new trial under § 25-11-102(4), MCA, stating that the evidence was not material and that it was merely cumulative and impeaching. The District Court also concluded that Larchick opened the door to the question about why she did not sue the Diocese in her first lawsuit by expressing misgivings about Central from the beginning. Finally, the District Court concluded that defense counsel did not rely upon or solicit false affidavits or unreasonably multiply the proceedings.

¶23 Additional facts and proceedings will be addressed as necessary throughout the following Opinion.

**DISCUSSION**

¶24 **I. Did the District Court err in denying Larchick's motion for a new trial under § 25-11-102(4), MCA, on the basis of newly discovered evidence?**

¶25 The decision to grant or deny a new trial on the basis of newly discovered evidence is within the discretion of the trial judge. *Groves v. Clark*, 1999 MT 117, ¶ 32, 294 Mont. 417, 982 P.2d 446. We will not disturb that decision absent a showing of a manifest abuse of discretion. *Groves*, ¶ 32. Ultimately, the abuse of discretion must be so significant that it materially affects the substantial rights of the complaining party. *Graveley Simmental Ranch Co. v. Quigley*, 2003 MT 34, ¶ 20, 314 Mont. 226, 65 P.3d

9

¶25 To the extent the district court makes factual findings to determine whether a new trial is warranted, we review those findings for clear error. *State v. Clark*, 2005 MT 330, ¶ 39, 330 Mont. 8, 125 P.3d 1099 ("*Clark I*").

¶26 The circumstances in which a new trial may be granted are set forth in § 25-11-102(1) through (7), MCA. Subsection (4), the subsection relevant to the present appeal, provides a basis for a new trial when there is "newly discovered evidence material for the party making the application which he could not, with reasonable diligence, have discovered and produced at the trial." In *Clark I,* we clarified the five factors that must be satisfied before a party can prevail on a motion for new trial on the basis of newly discovered evidence. As articulated in *Clark I,* the moving party must satisfy each of the following factors:

1. the evidence must have been discovered since the defendant's trial;
2. the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part;
3. the evidence must be material to the issues at trial;
4. the evidence must be neither cumulative nor merely impeaching; and
5. the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome.

*Clark I*, ¶ 34.

¶27 On remand, the District Court found that factors (1) and (2) were established, stating that the events relating to the new evidence "were, obviously, discovered since the trial and could not have been discovered before trial." We agree with the District Court that factors (1) and (2) are clearly established in this case. The evidence provides that Halverson (Larchick's counsel) received the telephone call from "John Peterson" on April 25, 2007—nearly two months after the trial. Further, there is no evidence to

suggest that there was any lack of diligence in the discovery of the evidence. Therefore, we conclude that the District Court did not err in finding that factors (1) and (2) were established. However, while we agree with the District Court's conclusion that the evidence is "new evidence" sufficient to establish factors (1) and (2), we disagree with the court's conclusions on the remaining factors, which we address in turn below.

¶28 In addressing factor (3), which requires the newly discovered evidence to be material to the issues at trial, the District Court focused on the difference between the trial testimony that Hardenbrook was in the gymnasium versus post-trial evidence that Hardenbrook was not present and concluded that factor (3) could not be established. In reaching this conclusion, the District Court determined that the newly discovered evidence put Hardenbrook only about eight to twelve feet further away from what the evidence suggested at trial. Therefore, according to the court, the newly discovered evidence was "not materially different from what Mr. Hardenbrook said at trial."

¶29 Larchick contends that the District Court erred in concluding that evidence Hardenbrook was not in the gymnasium at the time of the incident was not material to the issues at trial. Larchick argues that the Diocese hinged its entire case on Hardenbrook's presence in the gymnasium and that "every defense liability witnesses" testified that the P.E. teacher must be present in order to "control the manner of play and prevent injury to the students." The Diocese, on the other hand, argues that evidence cannot be material if it is inadmissible. Here, the Diocese argues that Halverson's affidavit submitted in support of the motion for a new trial contains hearsay and is neither admissible nor material to the issues at trial. According to the Diocese, the evidence is merely a

11

statement concerning Halverson's recollection of an alleged telephone conversation that she had with a "Mr. Peterson" about Hardenbrook.

¶30     In this case, however, it is evident from the record that a significant issue at trial was whether the school provided adequate supervision of Larchick's P.E. class. The Diocese consistently maintained that the school provided such supervision and that Hardenbrook was present in the gymnasium at the time of the incident. At trial, Hardenbrook specifically testified that he was in the gymnasium when Larchick was injured. Evidence that Hardenbrook was not, in fact present is undoubtedly material to the issue of whether the school provided adequate supervision. The District Court erred in determining otherwise and we conclude that factor (3), requiring the newly discovered evidence to be material to the issues at trial, is satisfied.

¶31     Furthermore, despite the Diocese's argument to the contrary, the District Court did not err in determining that Halverson's affidavit was admissible even though it contained hearsay. Under the residual exception to the general prohibition on hearsay, a statement is admissible even though it is not specifically covered by the other exceptions on hearsay if it has "comparable circumstantial guarantees of trustworthiness." M. R. Evid. 803(24). This exception "looks to the circumstances surrounding a hearsay statement when it is made—the circumstantial guarantees of trustworthiness that lend reliability to the hearsay statement in lieu of cross-examination." *State v. Hocevar*, 2000 MT 157, ¶ 50, 300 Mont. 167, 7 P.3d 329. (Internal quotations omitted.) While the residual exception "should be used sparingly, and only in exceptional circumstances," we conclude that Halverson's affidavit was admissible as a trustworthy statement of an officer of Court under M. R.

12

Evid. 803(24). *Hocevar*, ¶ 50 (citing *State v. Brown*, 231 Mont. 334, 338, 752 P.2d 204, 207 (1988). Significantly, the Diocese does not necessarily dispute Halverson's description of the phone call from "Mr. Peterson" or the phone record which indicates that the call was placed from Hardenbrook's cell phone.

¶32 As to factor (4), the District Court concluded that the newly discovered evidence was "somewhat cumulative to other testimony" that put Hardenbrook off the gymnasium floor. Although the District Court agreed that Hardenbrook would be subject to being impeached, it reasoned that "new evidence that is merely impeaching is not [a] sufficient basis for a new trial." Thus, the District Court concluded that Larchick could not establish factor (4), which requires the evidence to be neither cumulative nor merely impeaching.

¶33 Under § 26-1-102(4), MCA, evidence is "cumulative" when there is "additional evidence of the same character to the same point." Evidence is "merely impeaching" when "it is collateral in nature and does not have a direct bearing on the merits of the trial under review." *State v. Clark*, 2008 MT 391, ¶ 25, 347 Mont. 113, 197 P.3d 977 ("*Clark II*"). On remand, the District Court did not elaborate on what it considered to be "other testimony." Presumably the court was referring to the testimony of those students who stated that Hardenbrook was not in the gymnasium when Larchick was injured. In this case, however, we do not agree that the newly discovered evidence is simply "additional evidence of the same character to the same point" or that is it "collateral in nature." The newly discovered evidence that Hardenbrook was not in the gymnasium is non-cumulative given Hardenbrook's crucial role in the litigation and the potential

13

significance of the evidence. Unlike a casual observer witness, Hardenbrook was employed by the Diocese as the responsible teacher on duty at the time Larchick was injured. As the record demonstrates, Hardenbrook was in charge of selecting the P.E. activities and ensuring a safe and appropriate environment for those activities to occur. Both the Diocese and Larchick argued throughout the proceedings that Hardenbrook's whereabouts at the time of the incident was significant, seeking to establish that Hardenbrook was either in or outside the gymnasium. It follows that Hardenbrook's version of the events carries added weight and is more significant to the present issues than the version set forth from the student witnesses. Further, Hardenbrook's whereabouts has a direct bearing on Larchick's claim that the school failed to provide adequate supervision and on the Diocese's defense that it did. Notably, evidence from Hardenbrook himself that he was not present in the gymnasium at the time of the incident now runs counter to his employer's position in the litigation regarding adequate supervision. Therefore, we conclude that the newly discovered evidence regarding Hardenbrook's whereabouts is non-cumulative, and that the District Court erred in determining that factor (4) was not satisfied.

¶34 We now turn to a discussion of the fifth and final factor of the five-part test for a new trial based on newly discovered evidence. Under factor (5) "the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome." *Clark I*, ¶ 34. We have stated that this factor "is most likely to be the crux of any district court's evaluation of new trial motions based on new evidence." *Clark I*, ¶ 36. When making this determination, the trial judge should evaluate the weight and credibility of

the newly discovered evidence and "consider what impact, looking prospectively at a new trial with a new jury, this evidence may have on that new jury." *Clark I*, ¶ 36. In addressing this factor on remand, the District Court noted that while the evidence "could have some impact on Mr. Hardenbrook's credibility," there was no reasonable probability of it producing a different outcome. The District Court found that "[e]ven if Mr. Hardenbrook had been on the gym floor itself, Jordan Larchick was injured away from the ball and the flow of play."

¶35 The Diocese argues that the District Court properly evaluated the evidence and its probable impact on a new jury. Nevertheless, based on our analysis with respect to factors (3) and (4) above, we cannot reasonably conclude that the outcome would not be different in a new trial with a new jury. As noted above, a significant issue at trial was whether Hardenbrook was present in the gymnasium at the time Larchick was injured. The Diocese introduced considerable evidence at trial that Hardenbrook was present, including testimony from a number of students who stated that Hardenbrook was in the gymnasium when Larchick was injured. Further, the Diocese's expert witness Arthur Miller relied on student affidavits stating that Hardenbrook was present. Most importantly, however, Hardenbrook himself testified that he was present. Given the relevance of the new evidence to the issue of whether the school provided adequate supervision, we conclude that there is at least a reasonable probability that the newly discovered evidence would produce a different outcome at a new trial.

¶36 To summarize, we conclude that the District Court manifestly abused its discretion in denying Larchick's motion for a new trial under § 25-11-102(4), MCA. The five-

15

factor test for a new trial on the basis of newly discovered evidence is satisfied. Thus, we reverse and remand for a new trial. Since we reverse and remand for a new trial under Issue I, we need not address Larchick's Issues II, III, and IV.

¶37 **V. Did the District Court err in denying Larchick's motion for costs and fees on the basis of defense counsel's alleged misconduct?**

¶38 Larchick argues on appeal that the District Court erred in denying her motion for costs and fees under § 37-61-421, MCA, and under Rule 56(g) of the Montana Rules of Civil Procedure. Under § 37-61-421, MCA, "[a]n attorney or party to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct." Under Rule 56(g) a party may obtain costs and fees when affidavits have been "presented in bad faith or solely for the purpose of delay . . . ." If a court determines that Rule 56(g) applies, the offending party is required to pay "the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur . . . ."

¶39 We review a district court's determination to award costs and fees under § 37-61-421, MCA, or Rule 56(g) for an abuse of discretion. *Tigart v. Thompson*, 244 Mont. 156, 159-60, 796 P.2d 582, 584 (1990); *see also Denton v. First Interstate Bank of Com.*, 2006 MT 193, ¶ 19, 333 Mont. 169, 142 P.3d 797. A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *In re G.M.*, 2009 MT 59, ¶ 11, 349 Mont. 320, 203 P.3d 818. The party seeking to reverse a ruling carries the burden to demonstrate the abuse of

16

discretion. *In re G.M.*, ¶ 11. Because the district court is in the best position to know the nature and extent of any alleged violation, we generally defer to the district court's discretion in addressing costs and fees under § 37-61-421, MCA. *McKenzie v. Scheeler*, 285 Mont. 500, 506, 949 P.2d 1168, 1172 (1997).

¶40 On remand, the District Court determined that "defense counsel did not multiply the proceedings in this case at all, much less unreasonably, vexatiously, or otherwise." Consequently, the District Court determined that Larchick was "not entitled to costs, expenses or fees pursuant to [§ 37-61-421, MCA] or any other law." The District Court also concluded that attorney conduct in this case "was well within the bounds of normal and usual adversarial proceedings." The District Court did not specifically address whether Larchick was entitled to costs or fees under Rule 56(g), although the court noted in its Ruling on Post-Trial Motions that Larchick's contentions with respect to the affidavits were not supported by the evidence.

¶41 Larchick argues on appeal that defense counsel engaged in numerous acts of unreasonable conduct, including that defense counsel submitted false affidavits from two students who were present at the time Larchick was injured, Patrick Macpherson ("Macpherson") and Nicholas Watson ("Watson"). Specifically, Larchick contends that Macpherson and Watson signed affidavits stating that Hardenbrook was in the gymnasium when Larchick was injured and that both students later refuted these statements in depositions taken prior to trial. Macpherson stated during his deposition that he twice told defense counsel that Hardenbrook was not in the gymnasium at the time of the incident but that defense counsel nonetheless insisted that he sign affidavits

17

stating that Hardenbrook was present. As with Macpherson, Watson also signed an affidavit stating that Hardenbrook was in the gymnasium. He too later refuted this statement in a deposition, maintaining that he told defense counsel prior to signing the affidavit that Hardenbrook was in the weight room, not the gymnasium. While these affidavits were not introduced at trial, Larchick claims that defense counsel's actions needlessly multiplied court proceedings in violation of § 37-61-421, MCA. Larchick also alleges that defense counsel's actions justified costs and fees under Rule 56(g).

¶42 Larchick's arguments fail to convince this Court that the District Court acted arbitrarily or without conscientious judgment when it denied Larchick's motion for costs and fees under § 37-61-421, MCA. While Larchick argues that defense counsel's conduct was questionable, even inappropriate, Larchick does not demonstrate how those alleged actions multiplied the proceedings in a vexatious or unreasonable manner. Moreover, we note that that the District Court is in the best position to determine whether costs and fees are appropriate. Here, the District Court determined that the proceedings in this case were "well within the bounds of normal and usual adversarial proceedings." Because Larchick does not present evidence to demonstrate how the proceedings were multiplied either unreasonably or vexatiously, we conclude that the District Court did not err in denying Larchick's motion for costs and fees pursuant to § 37-61-421, MCA.

¶43 In addition, we are not persuaded by Larchick's argument that costs and fees are justified under Rule 56(g) of the Montana Rules of Civil Procedure. A party may obtain costs and fees under Rule 56(g) if, in the context of a motion for summary judgment, affidavits have been "presented in bad faith or solely for the purpose of delay." Costs

18

and fees include the "amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees . . . ."

¶44 Here, defense counsel does not dispute that Macpherson's and Watson's affidavits were submitted to the court in the context of a motion for summary judgment. Larchick, however, has failed to demonstrate that defense counsel submitted the affidavits in bad faith or solely for purposes of delay. According to the record, Macpherson admitted during Larchick's offer of proof at trial that defense counsel allowed him to read the affidavits and make any necessary changes prior to signing them. Macpherson also admitted that he did not request any changes to the affidavits prior to signing them and that his father was present when defense counsel conducted the interview about the incident. Similarly, at trial, Watson could not remember exactly where Hardenbrook was located when Larchick was injured; Watson equivocated, testifying that he remembered "seeing [Hardenbrook] in the gym—or I mean the weight room" and that he did not "know where exactly he was." In addition, defense counsel submitted numerous other affidavits from students who consistently maintained throughout the proceedings that Hardenbrook was in the gymnasium. Most significantly, Larchick has failed to point to any specific evidence in support of the contention that defense counsel knowingly submitted these affidavits in bad faith. Accordingly, we conclude that Larchick is not entitled to costs and fees pursuant to M. R. Civ. P. 56(g).

**CROSS-APPEAL**

¶45 **VI. Did the District Court err in concluding that Powers's act of striking Larchick was foreseeable as a matter of law and not an intervening force that severed the causal chain?**

¶46     We review a district court's grant of summary judgment de novo. *Fisher v. Swift Transp. Co., Inc.*, 2008 MT 105, ¶ 12, 342 Mont. 335, 181 P.3d 601.  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M. R. Civ. P. 56(c).  To avoid summary judgment after the moving party has met this burden, the non-moving party must present substantial evidence that raises a genuine issue of material fact.  *Fisher*, ¶ 12.

¶47     On appeal, the Diocese contends that Powers's "act of purposefully and spontaneously striking [Larchick] with his lacrosse stick, away from the play of the game and in contravention of class rules" was unforeseeable as a matter of law.   Thus, according to the Diocese, Powers's act was an independent, intervening cause which cut off its liability for Larchick's injuries.  The Diocese contends that Larchick must establish something more than a mere possibility of occurrence in order to establish foreseeability, and that while the specific injury need not be foreseeable, an objectively reasonable person must be able to expect it.   Here the Diocese claims that Powers's act was a "freakish," "bizarre," "spontaneous," and "unpredictable" act that Central could not have foreseen.  Finally, the Diocese claims that "[a]t minimum, the question should have been left to the jury."  Larchick, however, argues that the Diocese "foresaw injury when it gave 4' metal sticks to a group of freshman PE students" and that the Diocese "knew ahead of time that the students could hit and injure each other."  Larchick maintains that

the District Court did not err in determining as a matter of law that intentional or reactive striking would occur. Larchick also argues that the Diocese is bound by previous admissions by Principal Hanser that it did "not blame" Powers for Larchick's injuries—a statement Hanser made during a deposition in 2005.

¶48 We have held in prior opinions that an intervening act is a force that comes into motion after the defendant's negligent act which combines with the negligent act to cause injury to the plaintiff. *Cusenbary v. Mortensen*, 1999 MT 221, ¶ 26, 296 Mont. 25, 987 P.2d 351. An intervening act may sever the chain of liability for the defendant in certain situations. However, an intervening act will not sever the chain of liability if the "intervening act is one that the defendant might reasonably foresee as probable or one that the defendant might reasonably anticipate under the circumstances." *Fisher*, ¶ 41. Therefore, the ultimate focus in determining whether the chain of liability has been severed is foreseeability. In determining foreseeability, the inquiry is whether the "defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff." *Fisher*, ¶ 40. The defendant need not have foreseen the specific injury to the plaintiff. *Fisher*, ¶ 40. Typically, determinations of foreseeability in the context of intervening cause involve questions of fact properly reserved for the jury. *Fisher*, ¶ 42; *see also Prindel v. Ravalli County*, 2006 MT 62, ¶ 45, 331 Mont. 338, 133 P.3d 165. However, a district court may properly award summary judgment and determine foreseeability as a matter of law on issues of intervening cause when reasonable minds may reach but one conclusion. *Fisher*, ¶ 42; *Prindel*, ¶ 45.

21

¶49 In awarding partial summary judgment in favor of Larchick on the issue of intervening cause, the District Court determined that "[s]ome incidental contact between bodies and between bodies and sticks was expected[,]" and that at least part of the activity involved "striking another's [l]acrosse stick to dislodge the ball." The District Court also determined that some physical contact was foreseeable and that students would "hit and be hit with sticks." According to the court, the existence of penalties indicated that "exceeding the bounds of the game was contemplated and expected to occur, at least occasionally." The District Court also noted that the majority of Larchick's P.E. class "was made up of teenage, male, high school-age freshman with little, if any, experience with P.E. [l]acrosse." Based on the foregoing, the District Court concluded that "[s]ince it was or should have been foreseeable that intentional or reactive striking of another with a [l]across[e] stick would occur, when it did come to occur, it was not a superseding, intervening cause."

¶50 We agree with the District Court that it was clearly foreseeable that intentional or reactive striking between students would occur during the P.E. class which primarily consisted of 14-year-old freshman boys. As the District Court noted in its order granting partial summary judgment in favor of Larchick, the game involved running and required the students to attempt to dislodge the ball from the net on an opposing player's lacrosse stick. By the very nature of the game, physical contact was not only foreseeable but clearly expected. While Hardenbrook evidently instructed the students that "body checking" was not allowed, obviously one could foresee that some physical contact, if not more, would occur under the circumstances. The existence of penalties for those who

22

broke the rules of the lacrosse game is additional evidence that Hardenbrook expected that there would be instances where students would exceed the bounds of the game. By the Diocese's own admissions at trial and through its expert witness Arthur Miller, it was imperative for students to be supervised during the lacrosse activity. While there are numerous reasons why students should be supervised during P.E. activities, the most logical reason is to ensure that a safe and appropriate environment exists and that students are not injured while participating. Based on the foregoing, we conclude that it was reasonably foreseeable that intentional or reactive striking could occur under the circumstances. Thus, Powers's act of striking Larchick was not an intervening cause sufficient to break the causal chain. The District Court did not err in awarding partial summary judgment in favor of Larchick on this issue.

¶51 **VII. Did the District Court err in granting Larchick's motion *in limine* to exclude all evidence, argument, or suggestion at trial that Powers was at fault for Larchick's injury?**

¶52 We review a district court's grant or denial of a motion *in limine* for an abuse of discretion. *Grover v. Cornerstone Constr. N.W., Inc.*, 2004 MT 148, ¶ 10, 321 Mont. 477, 91 P.3d 1278. As stated above, a district court abuses its discretion when it "acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Grover*, ¶ 10. In this regard, the question is "not whether the reviewing court agrees with the trial court, but rather whether the trial court acted arbitrarily." *In re G.M.*, ¶ 11. Again, the party seeking to reverse a ruling carries the burden to demonstrate the abuse of discretion. *In re G.M.*, ¶ 11.

23

¶53 In granting Larchick's motion *in limine* to exclude all evidence, argument, or suggestion at trial that Powers was fault for Larchick's injury, the District Court focused on the 2005 deposition testimony provided by Principal Hanser in which he stated that the school did not blame Powers for Larchick's injury. According to the District Court, it would have been confusing and legally inconsistent in light of this testimony to allow the Diocese to argue that Powers, a non-party to the proceedings, was at fault. However, in *Faulconbridge v. State*, 2006 MT 198, 333 Mont. 186, 142 P.3d 777, we clarified when non-party conduct is admissible at trial. Under our decision in *Faulconbridge*, "a defendant may introduce non-party conduct only for the purpose of demonstrating that the non-party conduct was a superseding intervening cause of plaintiff's damages." *Faulconbridge*, ¶ 81. As we noted above, an intervening cause is "an unforeseeable event that occurs after the defendant's original act of negligence . . . [which] will generally serve to cut off defendant's liability." *Faulconbridge*, ¶ 81. In *Thayer v. Hicks*, 243 Mont. 138, 793 P.2d 784 (1990), we concluded that a "defendant's liability for his wrongful act will not be severed by an intervening cause if the intervening cause is one that the defendant might reasonably foresee as probable or one that the defendant might reasonably anticipate under the circumstances." In our analysis of the preceding issue, we concluded that Powers's act of striking Larchick was not an intervening cause sufficient to break the causal chain. In other words, we concluded that Powers's act was not unforeseeable. Since Powers's conduct was not unforeseeable under the circumstances and thus, not a superseding intervening cause, the presentation of any evidence, argument, or suggestion at trial that Powers was at fault for Larchick's injury

24

would have been improper. Therefore, we conclude that the District Court did not err when it granted Larchick's motion *in limine* to exclude evidence at trial that Powers was at fault for Larchick's injury.

¶54 **VIII. Did the District Court err in granting Larchick's motion for partial summary judgment on the issue of comparative negligence?**

¶55 In Montana, a plaintiff's contributory negligence may be raised as a defense to a negligence claim. However, contributory negligence does not bar a plaintiff from recovering damages "if the contributory negligence was not greater than the negligence of the person or the combined negligence of all persons against whom recovery is sought." Section 27-1-702, MCA. The recovery of damages will be barred only if the plaintiff is more than fifty percent negligent. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 31-33, 344 Mont. 540, 189 P.3d 615. As with foreseeability in the context of intervening cause discussed above, "the issue of contributory negligence on the part of the plaintiff and the degree of comparative negligence, if any, is normally an issue for the jury or fact-finder to resolve." *Peterson*, ¶ 32. However, as we have noted in previous opinions, summary judgment on the issue of comparative negligence is appropriate when reasonable minds "could not draw different conclusions from the evidence." *Peterson*, ¶ 32. We review a district court's decision to grant or deny a party's motion for summary judgment de novo. *Fisher*, ¶ 12.

¶56 In this case, the District Court found that some incidental contact between the players and sticks was anticipated and that there was "no evidence to suggest that when Jordan Larchick struck Alex Powers on the shin with his [l]acrosse stick, it was anything

25

other than expected, incidental contact." The District Court also stated that there was no evidence that Larchick "breached any duty owing to the defendants."

¶57 The Diocese argues that that the District Court erred in reaching this conclusion. It contends that Larchick actively participated in unreasonable conduct immediately before Powers hit Larchick with his lacrosse stick and that a disputed issue of fact exists as to whether Larchick was comparatively negligent. Specifically, the Diocese claims that Larchick hit Powers "in the ankle area with his lacrosse stick, and shoved and pushed [Powers] immediately preceding, if not precipitating, [Powers's] strike of [Larchick].

¶58 However, despite these claims, the Diocese identifies no material issues of fact to preclude summary judgment on the issue of comparative negligence. The only substantive argument made by the Diocese on appeal regarding this issue is that it offered evidence to the District Court that Larchick shoved or hit Powers in the ankle before Powers hit Larchick in the face with his lacrosse stick. We fail to see how this presents a material issue of fact precluding summary judgment on the issue of comparative negligence. Even assuming that Larchick hit Powers in the ankle, as the Diocese argues, the District Court found no evidence to suggest that Larchick's actions were anything other than incidental conduct which occurred during a P.E. activity. After reviewing the record and evidence in this case, we agree with the District Court that there is no evidence to suggest that Larchick acted negligently during the activity. We note that the Diocese's argument is particularly unpersuasive given that Principal Hanser stated that the school did not blame Larchick. We conclude that reasonable minds could not reach a different conclusion in light of the evidence presented in this case. The District Court did

26

not err in granting Larchick's motion for partial summary judgment on the issue of comparative negligence.

## CONCLUSION

¶59 In sum, the District Court erred by denying Larchick's motion for a new trial under § 24-11-102(4), MCA, on the basis of newly discovered evidence. In light of this decision, we do not address Larchick's Issues II, III, and IV. The District Court did not err in denying Larchick's motion for costs and fees on the basis of defense counsel's alleged misconduct. With respect to the Diocese's cross-appeal issues, we hold that the District Court did not err in concluding that Powers's act of striking Larchick was not an intervening cause sufficient to sever the causal chain, in granting Larchick's motion *in limine* to exclude evidence of non-party fault, or in granting Larchick's motion for partial summary judgment on the issue of comparative fault.

¶60 Affirmed in part, reversed in part, and remanded for a new trial.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

27